Baldwin v. Kulch Assoc.            CV-98-333-SD  10/29/98  P
                UNITED STATES DISTRICT COURT FOR THE

                     DISTRICT OF NEW HAMPSHIRE


William R. Baldwin;
Joan S. Baldwin


        v.                          Civil No. 98-333-SD


Kulch Associates, Inc.;
Charles Kulch


                        O R D E R


        The plaintiffs, William R. Baldwin and Joan S. Baldwin,

have individually brought this civil action for damages against

the defendant-accountants, Kulch Associates, Inc., and Charles

Kulch, alleging various theories of recovery arising out of the

plaintiffs' purchase of stock in a company named National Wood

Products, Inc.  The complaint forwards seven theories of

recovery: (I) Rule 10b-5 of the Securities Exchange Act of 1934,

15 U.S.C. § 78j and regulations at 17 C.F.R. § 240.10b-5; (II)

sections 12(1) and 12(2) of the Securities Act of 1933, 15 U.S.C.

§ 77*l*(a)(1), (a)(2); (III) the New Hampshire Uniform Securities

Act, Revised Statutes Annotated (RSA) 421-B:3, B:5; (IV)

fraudulent performance of accounting services; (V) negligent

performance of accounting services; (VI) unauthorized practice of

accountancy, RSA 309-B; and (VII) breach of fiduciary duty. Jurisdiction is invoked under 15 U.S.C. §78aa.

Before the court is defendants' motion to dismiss counts II (in part), III, VI, and VII for failure to state a claim upon which relief may be granted.

## Background[1]

Approximately eighteen months after plaintiffs made their second and final investment in National Wood Products, Inc. ("National Wood"), the Baldwins learned that their investment was worthless. The company was bankrupt. Although the Baldwins had considered liquidating their investments less than one year before National Wood filed for bankruptcy, they decided not to do so based on advice they received from Kulch Associates, Inc., and its agent Charles Kulch, National Wood's accountants. It was also the defendants Kulch and Kulch Associates, Inc. (collectively referred to as "defendants" or "Kulch") who originally solicited and advised the Baldwins to invest in National Wood.

Prior to its demise, National Wood was a wood products manufacturing company located in New Hampshire. Kulch first

---

[1]The facts are recited as alleged by plaintiffs and accepted as true for the purposes of this motion.

2

contacted the Baldwins in October of 1995 and informed them that National Wood was a profitable investment which would generate generous returns. The Baldwins were also informed that Kulch was a certified public accountant (CPA). Based on these assurances, the Baldwins invested five thousand dollars in National Wood's stock.

Kulch solicited a second investment from the Baldwins in December of 1995. Again Kulch held himself out as a CPA and represented to the Baldwins that the financial condition of National Wood was such that generous returns could be made on an investment. Based on these representations, the Baldwins invested another fifteen thousand dollars in National Wood.

At a stockholders' meeting in July of 1996, Kulch again solicited the Baldwins to invest more money in National Wood. At this meeting Kulch presented the Baldwins with financial statements, prepared on Kulch Associates letterhead, that showed National Wood as having positive cash flow and assets in excess of liabilities. They did not make an additional investment, but decided against liquidating their current twenty thousand dollar investment based on Kulch's representations.

In June of 1997 National Wood filed a voluntary Chapter 11 petition for reorganization, and in September of 1997 the case was converted to a Chapter 7 liquidation. It is expected that

there will be no assets to distribute to creditors and investors, and the Baldwins have also learned that Kulch himself was not a licensed accountant.[2]

## Discussion

### 1. Standard of Review

When reviewing a motion to dismiss, the court's task is limited. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). When considering the issue, a court must "take the well-pleaded facts as they appear in the complaint, extending plaintiff every reasonable inference in his favor." Pihl v. Massachusetts Dep't of Educ., 9 F.3d 184, 187 (1st Cir. 1993). The court may properly dismiss a claim "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992) (citation omitted).

---

[2]Although not included in their complaint, plaintiffs also allege in their memorandum in opposition that defendants were also shareholders of National Wood.

Cases alleging fraud are subject to the additional requirements of Federal Rule of Civil Procedure 9(b),[3] which states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." When dealing with securities, "the court will not render any decision as to whether a particular statement is rendered misleading by a particular omission. It will merely determine whether plaintiffs have sufficiently alleged circumstances under which plaintiffs could conceivably prove their claims." Schaffer v. Timberland Co., 924 F. Supp. 1298, 1305 (D.N.H. 1996) (citation omitted). In any fraud case, however, whether general fraud or securities fraud, Fed. R. Civ. P. 9(b) "requires that plaintiffs specify the time, place, and content of an alleged false misrepresentation." Manchester Mfg. Acquisitions, Inc. v. Sears, Roebuck & Co., 802

---

[3]Inexplicably, defendants' memorandum fails to address Rule 9(b). Furthermore, it would appear to the court that plaintiffs' federal claims are subject to the Private Securities Litigation Reform Act (PSLRA) of 1995, 15 U.S.C. § 78u-4, which imposes further pleading requirements upon plaintiffs bringing securities actions. At minimum, the pleading requirements of the PSLRA apply to the plaintiffs' § 10-b claim, 15 U.S.C. § 78j, and at least arguably govern their count based on §§ 12(1) and 12(2), 15 U.S.C. § 77l. The court, however, need not reach this issue at this time as it finds that plaintiffs' § 12(1) claim fails to meet the minimal notice-pleading standard and defendants have not moved to dismiss the other claims based on federal law.

5

F. Supp. 595, 600 (D.N.H. 1992) (citations ommitted). See also Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985) (when fraud lies at the core of the action, Rule 9(b) requires that the circumstances of the fraud be stated with particularity). When the claim is based upon state law, "although state law governs the burden of proving fraud at trial, the procedure for pleading fraud in federal courts . . . is governed by the special pleading requirements of Federal Rule of Civil Procedure 9(b)." Id. Allegations based on "information and belief" are not enough, and the complaint must contain "specific allegations of fact which strongly imply a fraudulent intent." Maldonado v. Dominguez, 137 F.3d 1, 10 (1st Cir. 1988).

2. Defendants' Motion to Dismiss

a. Count II - Securities Act of 1933

Defendants argue that the alleged violation of section 12(1) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(1), must be dismissed. According to Kulch, the section is inapplicable because the securities were not publicly registered, and in any event, plaintiffs have not stated a claim under that section because they have not alleged a violation of 15 U.S.C. § 77e (section 5 of the Securities Act). Defendants do not challenge the portion of Count II alleging a violation of section 12(2),

6

15 U.S.C. § 77*l*(a)(2). The Baldwins respond that because the securities were indeed <u>not</u> registered, a viable claim has been asserted under section 12(1) of the Act.

Section 12(1) of the 1933 Securities Act provides a private right of action against "[a]ny person who . . . offers or sells a security in violation of [section 5][4] of this title." 15 U.S.C. § 77*l*(a)(1). A violator of section 12(1) or 12(2) "shall be liable . . . to the person purchasing such security from him . . . at law or in equity." <u>Id</u>. § 77*l*(a). Section 5 in turn contains three subsections which prohibit selling securities without first filing a registration statement and prohibit selling registered securities without a prospectus meeting the requirements of section 77j. <u>See</u> 15 U.S.C. § 77e.

Defendants' conclusion that section 12(1) only applies to the sale of a registered security without a prospectus is patently incorrect. Although section 5 does prohibit the sale of a registered security unaccompanied by a prospectus, it also plainly prohibits the offer or sale of any <u>unregistered</u> security.[5] <u>See</u> <u>Pinter v. Dahl</u>, 486 U.S. 622, 641-42 (1988).

---

[4]15 U.S.C. § 77e (prohibiting the sale of unregistered securities).

[5]Section 5, 15 U.S.C. § 77e, provides in part as follows:

> (a) Unless a registration statement is in effect as to a security, it shall be unlawful for any

Therefore, defendants' argument that the securities at issue must have been publicly registered misses the point--this allegation actually states a claim under section 12(1). The registration requirement is stated broadly, and presumptively applies to all sales.

Of course, defendants may avoid the broad registration requirements of section 5 by proving the affirmative defense that the securities were exempt under 15 U.S.C. § 77d. <u>See</u> <u>Pennaluna & Co. v. SEC</u>, 410 F.2d 861, 864 (9th Cir. 1969) (person claiming the exemption has the burden) (citing <u>SEC v. Ralston Purina Co.</u>, 346 U.S. 119 (1953)). For example, so-called "private offerings" are exempt from the registration requirements. <u>See</u> 15 U.S.C. § 77d(2) (exempting from section 5 "transactions by an issuer not involving any public offering"). Perhaps defendants' argument that the securities must have been "publicly registered" is an attempt to argue this affirmative defense. Defendants have stated in their memorandum that "[u]pon information and belief,

---

person, directly or indirectly --
    (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or
    (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

the securities at issue were not publicly registered," but in any event they have not argued nor proven that the securities were exempt from registration. Moreover, whether a particular sale is a "public offering" is a fact-specific inquiry, and it is established that secondary or over-the-counter transactions may constitute "public offerings." See Pennaluna & Co., supra, 410 F.2d at 864; SEC v. Dolnick, 501 F.2d 1279, 1281-82 (7th Cir. 1974).

Nevertheless, defendants correctly state that "nowhere in their Complaint do the Plaintiffs allege that the securities were issued in violation of Section 5 . . . ." Memorandum of Law in Support of Defendants' Motion to Dismiss at 4. Although the Baldwins now argue that defendants violated section 5 by selling securities without complying with the registration requirements, their complaint does not contain anything that could be construed as alleging a violation of section 5. Oddly enough, the allegation that the securities were unregistered came from defendants themselves. Accordingly, defendants' motion to dismiss the section 12(1) claim must be granted. Pursuant to plaintiffs' request, however, the court grants leave to amend the complaint.

## b. New Hampshire Uniform Securities Act

The complaint, according to defendants, fails to state a claim under RSA 421-B:3 due to lack of contractual privity. Defendants also argue that plaintiffs have failed to state a claim under RSA 421-B:5 because none of the facts as alleged are proscribed by this statute. Plaintiffs respond that privity is not necessary to state a claim under RSA 421-B:3 and that sufficient facts have been alleged to state a claim under RSA 421-B:5.

New Hampshire has adopted the Uniform Securities Act for its Blue Sky Law. The New Hampshire law, however, "contains numerous variations, omissions and additional matter . . . ." 7B U.L.A. 513 (1985). Section 421-B:3 was adopted from the Uniform Securities Act without change. "This section is substantially the Securities and Exchange Commission's Rule X-10B-5, [17 C.F.R. § 240.10b-5], which in turn was modeled upon § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) . . . except that the rule was expanded to cover the purchase as well as the sale of any security." Unif. Sec. Act § 101 Comment, 7B U.L.A. 516 (1985). The New Hampshire statute departs from the Uniform Act by providing an explicit private cause of action for violations of RSA 421-B:3. See RSA 421-B:25. Defendants' privity argument

is grounded in the language of RSA 421-B:25, II, which in relevant part provides:

> II. Any person who violates RSA 421-B:3 in connection with the purchase or sale of any security shall be liable to any person damaged by the violation of that section who sold such security to him or to whom he sold such security, and any person who violates RSA 421-B:5 in connection with the purchase or sale of any security shall be liable to any person damaged by the conduct proscribed by RSA 421-B:5. . . . Damages in an action pursuant to this paragraph shall include the actual damages sustained plus interest from the date of payment or sale, costs, and reasonable attorney's fees. (Emphasis by defendant.)

According to defendants, the above-underlined language indicates that contractual privity with the seller is required to establish liability under RSA 421-B:3. Plaintiffs, however, give a broader reading to RSA 421-B:25, focusing on the liability to "any person damaged."

Although 421-B:25 is not identical to the Uniform Act's Civil Liability provision, the Uniform Act similarly restricts its application, making "any person who offers or sell a security . . . liable to the person buying the security from him." Unif. Sec. Act § 410, 7B U.L.A. 643. Identical language is also found in section 12 of the Securities Act. See 15 U.S.C. § 77l. Although this language "contemplates a buyer-seller relationship

11

not unlike traditional contractual privity," Pinter, supra, 486 U.S. at 642 (interpreting section 12), the court does not read the language so restrictively. In Pinter, the Supreme Court considered whether the similar language in section 12 so restricted its application, and concluded that liability extended to any "person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interest or those of the securities owner." 486 U.S. at 647. Before reaching this conclusion, the court examined the language of section 12, including the definition of the terms "sale" and "sell." See Pinter, 486 U.S. at 643. The New Hampshire Act contains the same definition of "sale" and "sell." Compare RSA 421-B:3, XIX, with 15 U.S.C. § 77b(3). Thus the Supreme Court's conclusion that the buyer-seller relationship contemplated by section 12 was satisfied when the defendant solicited the sale is illuminating. The court finds no meaningful distinction between the requirement found in section 12 and that found in RSA 421-B:25; thus plaintiffs do not have to allege strict contractual privity to state a claim under RSA 421-B:3. Cf. Dinco v. Dylex Ltd, 111 F.3d 964, 967 (1st Cir. 1997) (noting that New Hampshire's Blue Sky law explicitly recognizes several types of vicarious liability). Although the qualifying language of RSA 421-B:25, II, restricts the scope of RSA-B:3, it appears

12

to mean something broader than contractual privity.[6] Plaintiffs'
allegation that defendants solicited the sale states a claim
under RSA 421-B:3.

Defendants also argue that plaintiffs have failed to allege
any facts which, if proved, would establish a violation of RSA
421-B:5. Defendants argue that all of the claims allude to
misstatements of material fact (in connection with the purchase
or sale of a security), which more properly fall under RSA 421-
B:3, rather than RSA 421-B:5, which deals with market
manipulation. Plaintiffs point to specific representations made
by defendants which properly state a claim under RSA 421-B:5.

The section in question is not found in the Uniform
Securities Act, and there are no reported New Hampshire cases
interpreting the section. The court is left scant guidance as
to the proper interpretation of the statute. By its own terms,
RSA 421-B:5 prohibits any "manipulative, deceptive or otherwise
fraudulent device or contrivance," including "fictitious
quotations." The section then goes on to illustrate,
nonexhaustively, what types of practices are meant to be
unlawful. The illustrations include "inducing the purchase or

_____

[6]Although RSA 421-B:30, VI, also seems to limit 421-B:3 by
referring to "investment advisors," compared to "any person" for
421-B:5, it is still possible for an accountant to fit this
definition if the services are not "solely incidental to the
practice of his profession." See RSA 421-B:2, IX.

13

sale of any security" based on "information to the effect that the price of the security will or is likely to rise or fall because of market operations . . . conducted for the purpose of raising or depressing the price of the security." RSA 421-B:5, III. At first glance, this section appears to mirror section 10(b) of the Securities Exchange Act of 1934, which also prohibits the use of "any manipulative or deceptive device or contrivance." See Pope v. Steinberg & Lyman, CV-88-119-L, slip op. at 15 (D.N.H. Sep. 9, 1990). If, however, this section was intended merely to duplicate the protections of section 10(b), it would be superfluous since RSA 421-B:3 is essentially 10-b(5), which interprets section 10(b). Thus the court is persuaded the legislature intended something more specific. The illustrations provided in RSA 421-B:5 use language similar to that found in section 9(a) of the Securities Exchange Act of 1934, which prohibits market manipulation. See 15 U.S.C. § 78i. The most natural conclusion to draw from this is that the legislature intended the section to apply specifically to various forms of market manipulation.[7]

---

[7]Similarly, the 1988 amendments to the Uniform Securities Act added a third section under the heading "Fraudulent and Other Prohibited Practices" specifically dealing with market manipulation.

In this case, plaintiffs have not alleged that the defendants' acts were done for the purpose of manipulating the market. Indeed, as National Wood stock apparently was not traded publicly, it is difficult to envision how defendants could have committed market manipulation. Nonetheless, as plaintiffs have requested leave to amend their complaint, the court will grant such leave. To state a claim under RSA 421-B:5, however, the plaintiffs must allege both that there was a market for National Wood stock and that defendants acted for the purpose of manipulating such market.

### c. Count VI - Unauthorized Practice of Accountancy

Plaintiffs in Count VI allege that defendants engaged in the unauthorized practice of accountancy in violation of RSA 309-B. This count must be dismissed because, according to defendants, there is no private right of action for a violation of RSA 309-B.

Chapter 309-B, the New Hampshire Accountancy Act, is a comprehensive statutory scheme regulating the conduct and licensing of public accountants. See RSA 309-B:1 to -B:16. Administration and enforcement of 309-B is the responsibility of the New Hampshire board of accountancy (the "board"). See id. at -B:3. The board has the "power to take any action necessary and proper to carry out the purposes of [RSA 309-B]," and also has

15

broad rule-making authority.  Id. at -B:3, VII-VIII.  Complaints of violations go to the board, which has the discretion to investigate into the probable cause of any alleged violations and conduct subsequent disciplinary hearings.  See id. at -B:7 to -B:8.

There are no express provisions in Chapter 309 providing for a private right of action.  The board may seek injunctive relief from the appropriate court or may encourage the department of justice to pursue criminal proceedings, see RSA 309-B:11 to -B:12, but the statute is void of any language creating a private right of action.  Nonetheless, plaintiffs request that this court recognize such a private right of action for a violation of Chapter 309.

The New Hampshire Supreme Court has developed a three-factor test to determine whether liability may be based upon a statutory violation, which requires the following: (1) the plaintiff belongs to the class protected by the statute; (2) the injury is of the type intended to be protected by the statute; and (3) the legislature has either expressly or impliedly expressed an intent to give rise to a private right of action.  See Marquay v. Eno, 139 N.H. 708, 715, 662 A.2d 272, 277-78 (1995).  When the legislature intends to provide for such liability, it is generally expected that it will expressly do so.  See id.  For

16

example, certain deceptive trade practices and securities violations give rise to an express statutory private right of action.  See RSA 358-A:10 (deceptive trade practices); RSA 421-B:25 (securities violations).

Even assuming the first two prongs of Marquay, supra, are satisfied, plaintiffs have not pointed to any legislative intent to create a private right of action, and Chapter 309 does not expressly provide for such a right.  Under the New Hampshire Accountancy Act, the board of accountancy is charged with enforcement of its provisions, and specific provisions provide for injunctions and criminal enforcement, but nothing speaks to a private right of action or civil liability.  Given this regulatory scheme of Chapter 309 and the lack of express language, it is unlikely that the legislature intended to give rise to a private right of action for a violation of its provisions.  Cf. Spherex , Inc. v. Alexander Grant & Co., 122 N.H. 898, 904, 451 A.2d 1308, 1311 (1982) (legislative regulation of accountants is not intended as the only means to protect the public interest).  The court therefore finds no explicit or implicit legislative intent to create a private right of action for violations of RSA 309-B.  Cf. Bacon v. Smith Barney Shearson, Inc., 938 F. Supp. 98, 102 (1996) (no intent by legislature to create a cause of action for violation of unauthorized practice

of law statute, RSA 311:7-a to -c); Heritage Home Health, Inc. v. Capitol Region Health Care Corp., Civ. No. 95-558-JD, 1996 WL 655793, *5 (D.N.H. Oct. 1, 1996) (no intent by legislature to create cause of action for violation of statute imposing ownership disclosure requirements on health care practitioners, RSA 125:25-a to -c).

Furthermore, the New Hampshire Supreme Court has recognized no such private right of action under RSA 309-B. Creating such "novel causes of action . . . is a practice best left to the New Hampshire Supreme Court." Heritage Home Health, Inc., supra, at *5 (internal citation omitted). See also Kassel v. Gannett Co., 875 F.2d 935, 949-50 (1st Cir.1989) ("federal court applying state law must be hesitant to blaze a new trail"); Peck v. NGM Ins. Co., No. 94-90-B, 1995 WL 515628, *10 (D.N.H. June 21, 1995) (declining to recognize right of action not yet authorized by New Hampshire Supreme Court); Dennis v. Husqvarna Forest & Garden Co., Civ. No. 94-309-M, 1994 WL 759187, *6 (D.N.H. Dec. 27, 1994) (same).

The court therefore declines plaintiffs' request to create a private cause of action for a violation of RSA 309-B, and Count VI is accordingly dismissed.

## d. Count VII - Breach of Fiduciary Duty

Defendants Kulch and Kulch Associates argue in support of their motion to dismiss Count VII that an accountant does not owe any fiduciary duty to third parties who may rely upon financial statements prepared by the accountant. Plaintiffs reply that under the circumstances of this case, further fact-finding is necessary to determine whether a fiduciary duty exists.[8]

The issue then is whether the facts as alleged could support any viable theory that a fiduciary duty arose between plaintiffs and defendants. New Hampshire law imposes upon a fiduciary the "duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking." Appeal of Concerned Corporators of Portsmouth Sav. Bank, 129 N.H. 183, 203, 525 A.2d 671, 685 (1987). In considering whether a fiduciary relationship exists, the New Hampshire Supreme Court has adopted the following rule:

> "A fiduciary relation does not depend upon some technical relation created by, or defined in, law. It may exist under a variety of circumstances, and does exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with

---

[8]Although not alleged in its complaint, plaintiffs now assert that National Wood was a closely-held corporation and that defendants were also shareholders. Thus, the argument goes, defendants owed plaintiffs a fiduciary duty as co-shareholders of a closely-held corporation.

19

> due regard to the interests of the one reposing
> the confidence."

Id. at 204, 525 A.2d at 686 (quoting Lash v. Cheshire County Sav.
Bank, 124 N.H. 435, 439, 474 A.2d 980, 982 (1984)).  In doubtful
cases, whether such a relationship exists is a question of fact
for the trier of fact.  See Lash, supra, 124 N.H. at 438, 474
A.2d at 981.

Although the issue of an accountant's fiduciary duties to
third parties does not appear to have been addressed in New
Hampshire, other courts addressing the issue are generally
reluctant to recognize such a duty to clients,[9] let alone third

---

[9]As to an accountant's fiduciary relationship with clients,
see, e.g., Fleet Nat'l Bank v. H&D Entertainment, Inc., 926 F.
Supp. 226, 242 (D. Mass. 1996) (accountant-client relationship
usually does not involve fiduciary duties), aff'd, 96 F.3d 532,
540 (1st Cir. 1996) (if the accountant "had been engaged as the
receiver's financial advisor on the sale, our view might be
different"), cert. denied, 117 S. Ct. 1335 (1997); Myers v.
Finkle, 950 F.2d 165, 168 (4th Cir. 1991) (genuine issue of fact
as to accountant-client fiduciary duty resulting from advice and
recommendation to make investments; client alleged that the firm
had served them for ten years, that they had worked closely on
business matters, and that they were social friends); Burdett v.
Miller, 957 F.2d 1375, 1381-82 (7th Cir. 1992) (fiduciary duty
arose as business relationship shaded into social friendship
while accountant provided investment advice which cultivated
relation of trust and confidence over period of years); Dominguez
v. Brackey Enterprises, Inc., 756 S.W.2d 788 (Tex. Ct. App. 1988)
(fiduciary relationship between accountant and client where
accountant recommended an investment and there existed  long
association of being guided by and placing confidence in
accountant).

20

parties.[10]  The common thread running through these decisions is that an accountant will only be considered a fiduciary when there was a close relationship between the plaintiff and the accountant --something more than a mere business relationship.  Generally, this close relationship is something which develops over the years from previous dealings between the parties, such that a position of trust, confidence, and influence is created.  In addition to the history of the relationship of the parties, factors such as whether the accountant provided investment advice or exercised managerial control are also considered.

A breach of fiduciary duty claim was brought against an accountant by a third party (i.e. not a client) who made an investment based on the accountant's advice in Barber v. Somers, 102 N.H. 38, 150 A.2d 408 (1959).  The issue on appeal was whether rescission was an appropriate remedy for the plaintiff, and thus the validity of the underlying fiduciary duty claim was

---

[10]As to an accountant's fiduciary relation to third parties, see, e.g., Standard Chartered PLC v. Price Waterhouse, 945 P.2d 317, 335 (Ariz. Ct. App. 1996) (no fiduciary duty from accountant to third party buyer, because mere reliance on accountant's superior knowledge does not transform a duty of ordinary care into a fiduciary duty); Venturtech II v. Deloitte Haskins & Sells, 790 F. Supp. 576, 588 (E.D.N.C. 1992) (no fiduciary duty from accountant to third party investors because, although element of trust or confidence present, no element of superiority or influence), aff'd, 993 F.2d 228 (4th Cir. 1993), cert. denied, 511 U.S. 1051 (1994); Gutfreund v. Christoph, 658 F. Supp. 1378 (N.D. Ill. 1987) (no fiduciary duty from accountant to third party without "close relationship" with accountant).

never discussed.  Noteworthy, however, and consistent with the principles gleaned from the cases cited above, <u>supra</u> nn.9-10, the accountant and plaintiff in <u>Barber</u> were friends and had a previous business relationship.  It is in this manner that the instant case is distinguishable.

The court fails to see the "tell-tale signs of a fiduciary relationship which have been identified in the Complaint." Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 12.  At best, the complaint alleges facts which allude to the <u>breach</u> of a fiduciary duty, but not facts which allude to the <u>creation</u> of a fiduciary duty.  Reference is made to the alleged intentional misrepresentations, the misleading financial statements, and the undisclosed commissions.  But the complaint is fatally void of any specific allegations as to how this particular relationship entailed a "special confidence" reposed by the Baldwins such that Kulch was bound to act in the Baldwins' best interest.  <u>See</u> <u>Appeal of Concerned Corporators</u>, <u>supra</u>, 129 N.H. at 204, 525 A.2d at 686.

Rather, the complaint simply assumes its conclusion by stating that the defendants "held themselves out to be Certified Public Accountants . . . were engaged in the practice of accountancy, and as such were Plaintiffs' fiduciaries." Complaint at ¶ 59.  The only contacts between the parties

22

apparent from the complaint were the three separate instances when Kulch solicited investments from the Baldwins, one of which occurred at a stockholders' meeting. There are, however, no allegations of a previous business or personal relationship that would support a position of special confidence, influence, and trust. See Seymour v. N.H. Sav. Bank, 131 N.H. 753, 758, 561 A.2d 1053, 1056 (1989) ("there simply are no factual premises upon which the acquisition of influence and confidence could be predicated as a source of fiduciary responsibility").

There is another twist, however. Plaintiffs raise for the first time in their objection to the motion to dismiss that defendants were also shareholders in National Wood, a closely-held corporation, and as such were fiduciaries. While it may be a "familiar principle" of general corporate law, as plaintiffs assert, that shareholders of a closely-held corporation owe each other fiduciary duties, they have not pointed to any--and the court does not find any--cases suggesting that New Hampshire has adopted this principle of corporate law. Even if New Hampshire had adopted this principle, it is difficult to see how the Baldwins could have justifiably reposed a special confidence in the defendants as co-shareholders in National Wood, since they did not discover the defendants' alleged shareholder status until after the investments were made. Certainly there can be no

23

influence acquired or confidence reposed, based on Kulch's position as a shareholder, if the Baldwins were never aware of Kulch's unique position. Thus, because the facts alleged by plaintiffs do not support the existence of a fiduciary duty, plaintiffs' Count VII must be dismissed.

## Conclusion

For the reasons mentioned above, defendants' motion to dismiss (document 6) is granted in part and denied in part; plaintiffs are granted leave to amend counts II and III.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

October 29, 1998

cc:  Leonard W. Foy, Esq.
     Andrew W. Serell, Esq.

24