Cheshire
No. 82-240

### ARTHUR N. LASH & GLORIA LASH

v.

### CHESHIRE COUNTY SAVINGS BANK, INC.

February 3, 1984

436

*Law Offices of Robert V. Johnson, II*, of Concord (*Robert V. Johnson, II,* and *Anthony M. Ambriano* on the brief, and *Mr. Johnson* orally), for the plaintiffs.

*Arthur Olson, Jr., P.A.,* of Keene, and *Lane & Lane*, of Keene (*Edward J. Burke* on the brief, and *Mr. Olson* orally), for the defendant.

PER CURIAM. This appeal stems from a commercial loan agreement in which the defendant bank agreed to loan the plaintiffs $35,000 but then allegedly breached the loan contract. Trial before a jury in Superior Court (*Dalianis*, J.) resulted in the following verdicts: for the defendant, a finding of no breach of the contract; for the plaintiffs, a finding of breach of fiduciary duty and an award of $45,000 in damages; and for the plaintiffs, a finding of negligent infliction of emotional distress and an award of $15,000. We reverse in part.

In summarizing this complex factual situation, we refer only to the facts necessary to a determination of this appeal.

The plaintiffs operate a small business involved in transporting United States mail. In January 1980, they were in arrears on a number of accounts, including debts to one Harry C. Pappas. He approached the plaintiffs about having them obtain a loan from the bank to consolidate their debts. The plaintiffs agreed, and Mr. Pappas proceeded to make the loan arrangements with the bank because it was understood by plaintiffs that part of the loan proceeds would be used to reduce the plaintiffs' debt to Pappas. Pappas was substantially indebted to the bank, subsequently filed for bankruptcy, and is not a party to this action.

In February 1980, the plaintiffs executed a loan agreement with the bank for $35,000. This agreement was secured by interests in several motor vehicles and a second mortgage on their home, and was co-signed by Pappas. At the closing, the bank disbursed $5,622.94, and the plaintiffs later ratified additional disbursements of $5,086.38. The remaining $24,290.68 was never received by the plaintiffs, but was unilaterally credited by the bank to Mr. Pappas' account to reduce his debt.

At trial, the plaintiffs alleged that this disbursement to Pappas' account was never contemplated or authorized by them, although they admitted an indebtedness of $7,680 to Pappas. They contend that this action by the bank amounted to a breach of contract and a breach of fiduciary duty, and that the defendant's negligence caused them emotional distress.

The bank argued at trial that the plaintiffs owed Mr. Pappas the entire $24,290.68, and that the plaintiffs understood that this amount was to be credited to his account. The bank admitted, however, that the plaintiffs never provided written authorization to the bank to make this disbursement of the loan proceeds to another of the bank's debtors.

This appeal presents two issues for our consideration: whether a bank, through its loan officer, can stand in a fiduciary relation to a

small business when lending it money; and whether a verdict of negligent infliction of emotional distress is supportable.

■■ A fiduciary relationship has been defined as "a comprehensive [term] and exists wherever influence has been acquired and abused or confidence has been reposed and betrayed." *Cornwell v. Cornwell*, 116 N.H. 205, 209, 356 A.2d 683, 686 (1976). In doubtful cases, whether the conduct of two parties was such that a fiduciary relationship existed between them is a question of fact for the trier of fact, *Dugan v. First Nat'l Bank in Wichita*, 227 Kan. 201, 208, 606 P.2d 1009, 1015 (1980), and we will not set aside such a jury's determination unless it is not sustainable on the evidence. *See Powley v. Lessard*, 117 N.H. 991, 995, 380 A.2d 681, 684 (1977).

■■ The "trend is toward liberalizing the term [fiduciary] in order to prevent unjust enrichment." *Cornwell v. Cornwell*, 116 N.H. 205, 209, 356 A.2d at 683, 686 (1976) (citing RESTATEMENT (SECOND) OF TRUSTS § 44, Comment a, at 114 (1959)). "[O]nce a person becomes a fiduciary, the law places him in the role of a moral person and pressures him to behave in a selfless fashion. . . . [while] contract law does not go beyond the morals of the market place . . . [where] self-interest is the norm." Frankel, *Fiduciary Law*, 71 CALIF. L. REV. 795, 830 (1983).

The reason so many banks use names like "Trust," "Security," or "Guarantee" is that they hold themselves out as a safe and responsible place to entrust funds. The legislature has provided for detailed and extensive regulation of savings banks since 1895. Laws 1895, ch. 105. The officers of a savings bank take an oath "to the faithful discharge of their duties," RSA 384:5, and are governed by a prudent man test in investing money, RSA 387:18. The hundreds of pages of statutes and regulations affecting such banks clearly place them in a different category from all of the other corporations in this State who are not held to the high level of conduct we expect of a bank.

The Uniform Commercial Code sections of Article 4 devoted to bank deposits and collections even go so far as to make illegal any attempt by a bank to enter into an agreement to "disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care" or to "limit the measure of damages for such lack or failure." RSA 382-A:4-103(1). Where a bank exercises "bad faith" in handling an item, consequential damages are awarded. *See also* RSA 382-A:4-402. While these sections of the law do not explicitly govern the instant facts, they are indicative that the laws of the market place do not set a high enough standard for the financial institutions to which we entrust our financial security.

Other courts, when faced with the varieties of relationships between a bank and a customer, have found that certain fact patterns were legally sufficient to constitute a fiduciary relationship. *Brasher v. First Nat. Bank of Birmingham,* 168 So. 42 (Ala. 1936); *Tone v. Halsey, Stuart & Co., Inc.,* 286 Ill. App. 169, 3 N.E.2d 142 (1936); *First National Bank in Lenox v. Brown,* 181 N.W.2d 178 (Iowa 1970); *Richfield Bank & Trust Co. v. Sjogren,* 309 Minn. 362, 244 N.W.2d 648 (1976). *But see Washington Steel Corp. v. TW Corp.,* 602 F.2d 594 (3d Cir. 1979), *and Klein v. First Edina National Bank,* 293 Minn. 418, 196 N.W.2d 619 (1972).

■ This is not to say that either a confidential relationship or the normal trustee beneficiary status is imposed upon banks in their dealings when the law does not specifically otherwise so provide.

> "A fiduciary relation does not depend upon some technical relation created by, or defined in, law. It may exist under a variety of circumstances, and does exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence."

*Ford v. Guarantee Abstract & Title Co.,* 220 Kan. 244, 261, 553 P.2d 254, 267 (1976) (quoting *Lindholm v. Nelson,* 125 Kan. 223, 232, 264 P. 50, 54 (1928)).

■ In this case, the bank retained the plaintiffs' funds, disbursed them without authorization, and now demands that the plaintiffs repay the loan. We conclude that a jury reasonably could have found this action to be a breach of a fiduciary duty. The jury was instructed that if it found that the Lashes failed to prove a breach of the contract but instead prevailed on the fiduciary duty count it could award damages for that count alone. The jury was instructed to measure damages the same way under either the contract or fiduciary duty count. Because no double damages were awarded, there being a defendant's verdict on the contract count, we find no inconsistency in those two verdicts.

■■ The plaintiffs were also awarded $15,000 in damages for emotional distress. The only evidence that the plaintiffs produced or proffered at trial on this issue consisted of general allegations regarding a loss of credit, together with testimony that Mrs. Lash was upset and cried on one occasion. This court has said that damages for mental suffering "are not generally recoverable in a contract action," *Lawton v. Great Southwest Fire Ins. Co.,* 118 N.H. 607,

440

615, 392 A.2d 576, 581 (1978), and this is in substance a contractual dispute.

We reverse the verdict for $15,000 and affirm the other two.

*Verdict for $15,000 on negligence count vacated; the other two verdicts are affirmed.*

SOUTER, J., did not sit.