SourceTec v. Smiths Industries          CV-94-368-B     03/31/97

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Source Tec, Inc.,
and Robert Landis

    v.                                    Civil Action No. C-94-368-B

Smiths Industries
Medical Systems, Inc., et al.


**MEMORANDUM AND ORDER**

    Source Tec, Inc. ("STI") and its president, Robert Landis, have sued Smiths Industries Medical Systems, Inc. ("SIMS"), SIMS's parent corporation, Smiths Industries ("SI"), and several of SIMS's employees. Plaintiffs contend that the defendants improperly exploited confidential information that Landis gave them while attempting to negotiate a product licensing agreement. They assert six claims for relief: (1) breach of a February 1990 contract, (2) breach of confidence/fiduciary duty, (3) fraud and deceit, (4) promissory misrepresentation, (5) tortious conversion, and (6) unjust enrichment.[1] Defendants argue that

---

[1] Plaintiffs' second amended complaint contains eleven counts. Counts VII, VIII, and IX (conspiracy to defraud and deceive, conspiracy to commit tortious conversion, and interference with contractual relations) were dismissed without prejudice on June 3, 1996. Count X is a prayer for declaratory and injunctive relief. Count XI alleges that SI is liable for

they are entitled to summary judgment on the breach of confidence/fiduciary duty count because they did not have a confidential or fiduciary relationship with either STI or Landis. They also assert that they are entitled to summary judgment because plaintiffs' claims are barred by the statute of limitations and the information that Landis allegedly provided does not qualify as confidential information. As I explain below, I reject defendants' arguments because facts material to each argument remain in dispute.

## I.   BACKGROUND[2]

Landis invented a needle protection device designed to permanently cover a needle after its use, thus protecting health care workers from contamination. In an effort to bring his invention to market, Landis formed STI in 1985, and patented his invention. The patent encompasses a needle sheath for use with a hypodermic needle that prevents inadvertent access after use. The patent describes the plastic housing surrounding the needle

the actions of SIMS and its employees on a respondeat superior theory.

[2] The facts recited here are taken from the parties' submissions in support of their pleadings. I construe any disputed facts in favor of the plaintiffs, but make no findings as to the truth of any of the background facts.

2

and a hook-like protrusion designed to engage the needle and prevent movement within the housing. STI entered into a licensing agreement with American Medical Technologies (AMT) in 1986, granting it the right to make, use, and sell the device. In 1987, AMT closed its operations, and STI continued to develop and market the device on its own.

Landis gave samples of his device to Brian Rafferty, an employee of SIMS, at two industry trade shows, in December of 1988 and 1989. Landis asserts that he was told that SIMS would hold the sample and information he provided in confidence. On January 10, 1990, Landis met with defendant William Hollister, defendant Frank Willis, and other representatives of SIMS at SIMS's New Hampshire office. Landis claims that he was again told that SIMS would hold the information in confidence. After receiving these assurances, Landis provided SIMS with a working prototype of his invention, private documents, and significant know-how about how to attach his needle protection housing to a variety of medical devices.

On February 15, 1990, Landis and SIMS entered into a written agreement whereby Landis would supply SIMS with his patent application, technical information, and know-how related to his device in exchange for $200 and a technical evaluation to be

3

completed within six months.  The agreement specified that all information disclosed by Landis was to be treated as confidential and "used only for the purpose of evaluating the potential of the Product or eventually negotiating a royalty agreement."[3]  This confidentiality provision was to remain in effect for five years.  The agreement also provided that Landis was "entitled to all rights in the invention and patent (application) referenced above."  At SIMS's request, Landis was to give "such information as [SIMS] may reasonably request concerning the development of the Product," but SIMS expressly reserved the right "not to be limited in developing needle protection products from information or know-how which [was] not [Landis's] Confidential Information."  Landis provided additional information related to the device to SIMS in March and May of 1990.  The six month evaluation period agreed to in the February contract was extended by three months in an August 12th agreement.

Over the next several months, SIMS sought patent protection for its own needle protection device, which, Landis alleges, incorporated his ideas and know-how without recognition or

_____

[3]  The agreement also provided that information was not deemed "confidential" to the extent that: (1) it is in or comes into the public domain, (2) it is known to the receiving party prior to disclosure by the party giving the information, or (3) it is supplied by a third party having a right to do so.

4

compensation.  On June 4, 1990, Hollister filed a patent application for a needle protection device which named him, not Landis, as the inventor.  Landis was not informed of this application.

Landis saw a prototype of SIMS's needle protection device at a trade show in September 1990.  Landis, thinking the prototype design arose out of information that he had imparted to SIMS, assumed that SIMS had committed itself to him and his design.  Upon contacting SIMS, Landis was told by Willis that SIMS thought its device did not fall within the scope of Landis's patent.  In October, Willis sent Landis a letter again advising him that the device SIMS intended to market did not, in SIMS's opinion, come within the scope of Landis's patent.  The letter noted that SIMS was still "interested in obtaining the rights to your patent because our evolving future device designs may wish to encompass features contained within your patent.  We also acknowledge your 'know-how' and our proposal is designed to reward your further involvement in this respect."  A reasonable fact finder could conclude that SIMS considered Landis's "know-how" to be a valuable commodity.

Despite SIMS's professed belief that its device did not infringe Landis's patent, it entered into a licensing agreement

with Landis on December 5, 1990 giving SIMS the exclusive right to make, use, and sell various needle protection devices based on Landis's patent and "know-how" in exchange for a royalty on products derived from Landis's patent. Landis received royalties under this agreement in 1992, but SIMS terminated royalty payments in 1993.

During and after the period that SIMS and Landis were negotiating the licensing agreement, Hollister applied for additional patents for needle protection devices which Landis contends were based on confidential information imparted to SIMS. On January 8, 1991, the Patent Office issued a patent, No. 4,982,842 ("the '842 patent"), based on Hollister's first application. Landis claims that he did not discover the existence of this patent until September 1992, when he was informed by a third party that another patent had been issued to Hollister which referenced the '842 patent. It was only after this conversation, Landis contends, that he discovered that SIMS had breached his confidence and had not dealt with him in good faith.

Landis and STI filed the original complaint in this action on July 12, 1994.

## II.  STANDARD

Summary judgment is appropriate if the facts taken in the light most favorable to the nonmoving party show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Barbour v. Dynamics Research Corp., 63 F.3d 32, 36-37 (1st Cir. 1995), cert. denied, 116 S. Ct. 914 (1996).  A "material fact" is one "that might affect the outcome of the suit under the governing law," and a genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the facts are undisputed, the moving party must establish that it is entitled to judgment as a matter of law.  Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 764 (1st Cir. 1994).

## III.  DISCUSSION

### A.  Existence of a Fiduciary Relationship

The defendants first argue that the breach of fiduciary duty count (Count II) must be dismissed because they maintained an arm's length relationship with Landis and SIMS that was bereft of the "special confidence" marking a fiduciary or "confidential"

7

relationship.  See Lash v. Cheshire County Sav. Bank, Inc., 124 N.H. 435, 439 (1984).  While it is true that "business transactions conducted at arm's length generally do not give rise to fiduciary relationships," see Industrial Gen. Corp. v. Sequoia Pac. Sys. Corp., 44 F.3d 40, 44 (1st Cir. 1995) (applying Massachusetts law), a fiduciary relationship will be found to exist "wherever influence has been acquired and abused or confidence has been reposed and betrayed."  Lash, 124 N.H. at 438 (quoting Cornwell v. Cornwell, 116 N.H. 205, 209 (1976)).

As the First Circuit noted in Burten v. Milton Bradley Co., "a confidential relationship typically will be implied where disclosures have been made in business relationships between employers and employees, . . . purchasers and suppliers, . . . or prospective licensees and licensors . . . ."  Burten, 763 F.2d 461, 463 (1st Cir. 1985) (citing A. L. Frechette, Annotation, Implied Obligation Not to Use Trade Secrets or Similar Confidential Information Disclosed During Unsuccessful Negotiations for Sale, License, or the Like, 9 A.L.R.3d 665 (1966); Michael J. Hutter, Trade Secret Misappropriation: A Lawyer's Practical Approach to the Case Law, 1 W. New Eng. L. Rev. 1, 24-25 (1978)) (other citations omitted).  Burten applied Massachusetts law to find a fiduciary relationship between an

8

inventor and a potential licensee, and there is no reason to suspect the New Hampshire Supreme Court would follow a different course.  Cf. Lash, 124 N.H. at 438 (noting that the "trend is toward liberalizing the term 'fiduciary' in order to prevent unjust enrichment" (quoting Cornwell v. Cornwell, 116 N.H. 205, 209 (1976); in turn citing Restatement (Second) of Trusts § 44 cmt. a, at 114 (1959))); Vigitron, Inc. v. Ferguson, 120 N.H. 626, 632 (1980) (same).

Because a genuine factual dispute exists on the present record as to whether the defendants owed the plaintiffs a fiduciary duty not to misuse the plaintiffs' confidential information, defendants' motion for summary judgment on the plaintiffs' breach of fiduciary claim is denied.

## B.    Statute of Limitations

SIMS and SI next argue that all counts brought by Landis and STI are barred by New Hampshire's three-year statute of limitations.  N.H. Rev. Stat. Ann. § 508:4(I) (Supp. 1996). Landis and STI agree that the statute applies and concede that their action was brought more than three years from the date of the defendants' injurious acts.  Nevertheless, they argue that the limitations period should be equitably tolled due to the defendants' fraudulent conduct.  See Conrad v. Hazen, 140 N.H.

9

249 (1995) (noting that fraudulent concealment can be a distinct basis for tolling limitations periods).[4]

I deny defendants' motion for summary judgment invoking the statute of limitations because I find that plaintiffs have a triable claim that they were fraudulently induced to delay the filing of this action. First, as I have already noted, plaintiffs have produced sufficient evidence to proceed to trial on their claim that defendants owed them a fiduciary duty not to misuse Landis's confidential information. Second, as a matter of law, the failure to disclose material information will toll the statute of limitations if defendants had a duty to disclose the information. See Sprint Communications Co. v. FCC, 76 F.3d 1221, 1226 (D.C. Cir. 1996). Finally, plaintiffs have offered sufficient evidence to proceed to trial on their claims that defendants' failure to disclose the Hollister patent application was material to their decision to sign the December 5th licensing agreement, and plaintiffs had neither the motivation nor the ability to proceed with their claims after signing the agreement

---

[4] Because plaintiffs have demonstrated that they have a triable fraudulent concealment claim, I need not consider their alternative claim based on New Hampshire's "discovery rule," N.H. Rev. Stat. Ann. § 508:4(I).

10

until Landis learned of the Hollister patent in September 1992.[5]
If the period between the date that Hollister applied for the
patent (June 4, 1990) and the date that Landis learned of the
Hollister patent (September 1992) is excluded from the
limitations period, the plaintiffs' claims would not be barred by
the statute of limitations even if, as defendants argue, Landis
"discovered" his cause of action when he saw SIMS's prototype
needle protection device at the September 1990 trade show.  Since
a genuine factual dispute exists as to whether defendants
fraudulently induced Landis into signing the December 5th
licensing agreement, defendants' motion for summary judgment
based on the statute of limitations is denied.

## C.    Confidential Information

SIMS and SI also argue that none of the information Landis
disclosed to SIMS can be considered confidential because it was
publicly available.  If this contention is true, SIMS and SI
argue, they had no duty to keep the information secret and are
not liable for its disclosure or misappropriation.

---

[5]  Citing Wise v. Hubbard, 769 F.2d 1 (1st Cir. 1985),
defendants argue that the statute of limitations necessarily
began to run no later than January 1991 when the Hollister patent
was issued.  I reject this argument because Wise is inapplicable
in cases such as this where plaintiffs claim that defendants had
a fiduciary obligation to disclose the patent application.  Id.
at 4.

Landis and STI have produced sufficient information in response to defendants' summary judgment motion to permit a reasonable fact finder to conclude that the information disclosed to SIMS in 1990 was confidential trade secret information.[6] Plaintiffs' expert, patent attorney William B. Ritchie, testified in deposition that Landis's idea of combining his patented sample product with a fitting between the syringe and needle was not in the public domain and was a protectable trade secret in early 1990. He contends that this is so despite the existence of a patent issued in 1989 to Robert A. Norelli (No. 4,820,277), which also describes a needle protection device connected to a fitting between a syringe and needle. The Norelli patent describes a different needle protection device than the one covered by the Landis patent. Although it may seem obvious in hindsight that one could apply the Norelli concept to attach a different needle protection device to a fitting interposed between a syringe and a needle, substantial circumstantial evidence and testimony by Attorney Ritchie raise a factual question of whether Landis's idea was public knowledge in 1990.

---

[6] Whether certain information is a trade secret is a question of fact reflecting the parties' conduct and the nature of the information disclosed. CVD, Inc. v. Raytheon Co., 769 F.2d 842, 852 (1st Cir. 1985); 4 Robert M. Milgrim, Milgrim on Trade Secrets § 15.01[1][a][i] (1996).

The mere existence of the Norelli patent does not necessarily imply that the technology described therein was recognized to be applicable throughout the industry to all types of needle protection devices. Indeed, a device can be afforded protection as a trade secret even if "its essential mechanical concepts [are] already embodied in another well known machine that perform[s] a not very different function, and . . . the adaptation of that familiar machine to the exigencies [of a new situation is] a relatively simple undertaking for a competent technician." Atlantic Wool Combing Co. v. Norfolk Mills, Inc., 357 F.2d 866, 868 (1st Cir. 1966). A trade secret also can consist of a combination of elements which are all in the public domain. See, e.g., Rivendell Forest Prods., Ltd. v . Georgia-Pacific Corp., 28 F.3d 1042, 1045 (10th Cir. 1994) (citing Integrated Cash Management Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171 (2d Cir. 1990)); Imperial Chem. Indus. v. National Distillers & Chem. Corp., 342 F.2d 737 (2d Cir. 1965)). In addition to Ritchie's testimony, the fact that Hollister patented a needle protection device using the method of connection proposed by Landis is evidence that Landis's contribution was valuable as a trade secret. See 1 Robert M. Milgrim, Milgrim on Trade Secrets § 1.08[1] (1996) ("If an

13

invention has sufficient novelty to be entitled to patent protection, it may be said *a fortiori* to be entitled to protection as a trade secret.") (citing cases).

Landis and STI have also produced evidence from which a fact finder could infer that Landis made substantial efforts to keep his know-how related to his patent confidential and that he only disclosed it to SIMS after assurances that the information would remain secret. Circumstantial evidence in the record indicates that SIMS considered Landis's know-how to be valuable, belying their contention that the information was readily available in the public domain. In an October 1990 letter from Willis to Landis, Willis notes that SIMS "acknowledge[s] [Landis's] 'know-how.'" In addition, the December 1990 licensing agreement purports to compensate Landis in part for this "know-how." The value that SIMS placed on Landis's disclosures demonstrate that it considered the information useful in its development of its needle protection devices. Had this information been freely available to the public, SIMS would have no reason to consider it valuable. Thus, a fact finder could infer that SIMS itself considered Landis's know-how to be a trade secret not generally

14

recognized in the industry.[7]

## IV.  CONCLUSION

For the foregoing reasons, SIMS/SI's motions for summary judgment (document nos. 69, 73, and 74) are denied.

SO ORDERED.

_____
Paul Barbadoro
United States District Court


March  31, 1997

cc:  Daniel J. Katz, Esq.
     Ralph Holmes, Esq.
     Donald Burns, Esq.
     William Gardner, Esq.

---

[7]  I note that under New Hampshire law, a plaintiff apparently may gain injunctive relief based on a defendant's breach of a confidential relationship, even if the information disclosed does not constitute a trade secret.  Vigitron, 120 N.H. at 631-32.

15