Hillsborough-northern judicial district
No. 96-810

ETHEL M. AHRENDT, INDIVIDUALLY AND BY AND THROUGH JANE BATTS, UNDER A DURABLE POWER OF ATTORNEY

v.

GRANITE BANK

November 18, 1999

*Law Offices of David J. KillKelley*, of Laconia (*David J. KillKelley* on the brief and orally), for the plaintiff.

*Fernald, Taft, Falby & Little, P.A.*, of Peterborough (*Mark D. Fernald* on the brief and orally), for the defendant.

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Dodd S. Griffith* on the brief), for the New Hampshire Bankers Association, as *amicus curiae*.

THAYER, J. The plaintiff, Ethel M. Ahrendt, appeals rulings of the Superior Court (*Lynn*, J.) granting summary judgment on one count and directed verdicts on the two remaining counts in favor of the defendant, Granite Bank. We affirm.

In July 1992, the plaintiff was eighty years old. One of her accounts with the defendant, which then operated as Peterborough Savings Bank, was a money market account. Through a series of withdrawals, the account balance fell from more than $52,000 to less than $200 in under five weeks. Four transactions, accounting for $50,500 of the withdrawals, were carried out by four handwritten

notes, each requesting that the bank pay George Ward for purported home repairs.

The first payment of $11,500 was made on July 29, 1992. On that day, the plaintiff telephoned Jessica Cheney, a bank employee, to ascertain the balance in her account. For security purposes, Cheney first asked the plaintiff to state her social security number and then reported the balance. The plaintiff asked Cheney to repeat the balance to a man she identified as George Ward. The plaintiff stated that she could not find her checkbook but wished to withdraw money from her account to pay Ward. Cheney explained that the bank would honor a written authorization signed by the plaintiff. Ward later presented Cheney a written authorization signed by the plaintiff. Cheney verified the plaintiff's signature, asked Ward for identification, and made out a bank check payable to Ward. Before she processed the check, Cheney called the plaintiff to confirm her desire to make the transaction. The plaintiff confirmed that she wanted to pay Ward $11,500 from her account. Although Cheney felt "uncomfortable," especially when the plaintiff asked her to repeat the balance to Ward, the plaintiff "sounded clear" each time Cheney spoke with her.

Similar scenarios followed. On July 31, August 3, and August 5, the plaintiff asked the bank to pay Ward $11,000, $14,000, and $14,000, respectively. Each time the plaintiff called the bank, and Ward presented the bank with a written authorization signed by the plaintiff. For all but the July 31 transaction, the plaintiff's signature was verified, and the plaintiff was called to confirm her desire to make the transaction. After the account was overdrawn on August 13, a bank employee called the plaintiff to request that she cover the overdraft, and the plaintiff's family discovered that Ward had cheated the plaintiff. Following a police investigation, Ward was prosecuted and convicted.

The plaintiff thereafter brought suit, alleging that by honoring the signed written authorizations, the defendant: (1) breached the duty it owed the plaintiff that arose from a fiduciary or confidential relationship; (2) breached its duty of care to the plaintiff; and (3) breached its contract with the plaintiff. The trial court granted the defendant's motion for summary judgment on the fiduciary duty claim. At the close of the defendant's case, the trial court granted the defendant's motion for directed verdicts, ruling that as a matter of law, the defendant owed no "duty to [the plaintiff] that could be the basis for imposing liability."

On appeal, the plaintiff first argues that the court erred in granting summary judgment on her claim that the bank violated a

fiduciary duty when it approved her handwritten requests to transfer funds. When we review a summary judgment ruling, "we consider the evidence in the light most favorable to [the non-moving party] and, if no genuine issue of material fact exists, we determine whether [the] moving party is entitled to judgment as a matter of law." *N.H. Ins. Guaranty Assoc. v. Pitco Frialator*, 142 N.H. 573, 576, 705 A.2d 1190, 1192 (1998); *see* RSA 491:8-a, III (1997).

 As a general rule, the relationship between a bank and a customer is not a fiduciary one unless the law otherwise specifies. *See Lash v. Cheshire County Savings Bank*, 124 N.H. 435, 439, 474 A.2d 980, 982 (1984). The relationship between a bank and its depositor is a debtor-creditor relationship. *See Pappalardo v. Bank of Boston*, 133 N.H. 855, 859, 587 A.2d 251, 253 (1991). As such, the relationship between an ordinary depositor and the bank is contractual in nature. *See Heath v. Savings Bank*, 46 N.H. 78, 79 (1865).

A fiduciary relationship, however, can arise under certain facts if equity so requires. *See Lash*, 124 N.H. at 439, 474 A.2d at 982; 9 C.J.S. *Banks and Banking* § 248(b) (1996). We have found, for example, such a relationship between a mortgagee and a mortgagor in a foreclosure sale. *See Murphy v. Financial Development Corp.*, 126 N.H. 536, 541, 495 A.2d 1245, 1249 (1985). That a fiduciary relationship exists between a bank and its customer/depositor in certain cases, however, does not mean that a fiduciary relationship always exists. *See Lash*, 124 N.H. at 439, 474 A.2d at 982.

 Here, the plaintiff argues that the bank owed her a fiduciary duty as a matter of law. The plaintiff relies on cases, however, that are premised upon a savings bank's obligation to invest depositors' funds prudently because the bank's investments inure wholly to the benefit of its depositors. *See Appeal of Concerned Corporator of Portsmouth Sav. Bk.*, 129 N.H. 183, 203-06, 525 A.2d 671, 685-87 (1987) (plurality opinion); *cf. Peterborough Savings Bank v. King*, 103 N.H. 206, 208, 168 A.2d 116, 117 (1961). The plaintiff does not suggest that the bank's payment of her signed written authorizations related in any way to investments made by the bank for its depositors' benefit. Further, the plaintiff does not allege that the bank specifically contracted with her to act as a fiduciary.

 The plaintiff also argues that even if a bank does not always owe a customer a fiduciary duty, under the facts of this case, such a duty arose. According to the plaintiff, a fiduciary relationship arose because of the personal relationship between the plaintiff and the bank which justified the plaintiff in believing that the bank would

act in her best interest. This personal relationship is based on the plaintiff's status as a long-time customer of the bank and the employee handbook stating that the management of the bank should conduct business under high ethical standards. "The mere fact that a relationship is long-standing does not create a fiduciary duty." 9 C.J.S. *Banks and Banking* § 248, at 236; *see also Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 318 (2d Cir. 1993). Nor, under the circumstances of this case, does a hortatory statement in an employee handbook to conform to high ethical standards lead to the creation of a fiduciary duty. Thus, the trial court did not err in granting summary judgment on the fiduciary duty claim because no such duty arose under the facts of this case.

We next review the directed verdicts granted on the two remaining counts. "A motion for directed verdict may be granted only if the trial court determines, after considering the evidence and construing all inferences therefrom most favorably to the non-moving party, that no rational juror could conclude that the non-moving party is entitled to any relief." *Goodwin v. James*, 134 N.H. 579, 582, 595 A.2d 504, 506 (1991).

The plaintiff argues that the bank failed to follow its own rules limiting the manner in which withdrawals may be made, and that from the evidence of the bank's failure to follow such rules and "sound, customary banking practice," the jury could have found that the bank breached an implied covenant of good faith and fair dealing. Upon opening the account, the plaintiff agreed that withdrawals would conform with both the bank's by-laws as well as the specific rules that applied to the money market account. The bank's by-laws specifically permit withdrawals by "'written instrument,'" although withdrawals by written instrument other than by check are not specifically addressed. The bank's by-laws further state that "[t]he manner of withdrawal for any type of account shall be more specifically governed by the regulations of the Corporation and the agreement of deposit applicable to that type of account."

The bank's regulations of withdrawals from money market accounts state that "[y]ou may make an unlimited number of withdrawals from this Account in person, through the mail or at our Automatic Teller Machines (ATMs)." The plaintiff contends that the bank violated this regulation by permitting withdrawals from the money market account by the written authorizations, thereby breaching an implied covenant of good faith and fair dealing.

We have recognized an implied covenant of good faith performance where a contract "by word or silence . . . invest[s] one party with a degree of discretion in performance sufficient to deprive

another party of a substantial proportion of the agreement's value." *Centronics Corp. v. Genicom Corp.*, 132 N.H. 133, 143, 562 A.2d 187, 193 (1989). In *Centronics*, we set forth four questions to address in determining whether a party breached such a covenant. First, does the agreement "allow . . . or confer upon the defendant a degree of discretion in performance tantamount to a power to deprive the plaintiff of a substantial proportion of the agreement's value?" *Id.* at 144, 562 A.2d at 193. Second, did the parties intend to make a legally enforceable contract? *Id.* Third, "has the defendant's exercise of discretion exceeded the limits of reasonableness?" *Id.* Finally, did the defendant's abuse of discretion cause the damage or does the damage "result from events beyond the control of either party, against which the defendant has no obligation to protect the plaintiff?" *Id.* at 144, 562 A.2d at 194.

The parties do not dispute that they intended to enter into an enforceable contract. Assuming, without deciding, that the agreement granted the bank unfettered discretion, we conclude that no rational juror could have found that the bank's exercise of discretion exceeded the limits of reasonableness. In analyzing whether the bank exceeded the limits of reasonableness in allowing the withdrawals by written instructions, we look to the purpose of the agreement "against which the reasonableness of the complaining party's expectations may be measured, and in furtherance of which community standards of honesty, decency and reasonableness can be applied." *Id.*

The regulation allowing for unlimited withdrawals from a money market account neither forbids withdrawals by written instruction nor states that withdrawals can only be made in person, through the mail, or at ATMs. The regulation only describes which types of withdrawals may be made on an unlimited basis and does not negate the by-laws' allowance of withdrawals by written instrument.

In accepting written instructions from the plaintiff, the bank reasonably exercised its discretion. The purpose of the contract between the plaintiff and the bank was for the bank to hold her funds and to return them or to pay them upon her request. When Ward presented written instructions to pay him certain amounts of money, the bank contacted the plaintiff to verify the instructions, which she did. We decline to hold that after taking such measures, good faith required the bank to deny the plaintiff's requests simply because the requests under the facts of this case did not appear to be wise. Therefore, we conclude that no rational juror could have found that the bank breached an implied duty of good faith in its exercise of discretion.

■ Finally, the plaintiff argues that the bank breached its duty of care when its agents had reason to believe that Ward was exploiting the plaintiff but failed to protect her. "Claims for negligence rest primarily upon a violation of some duty owed by the offender to the injured party. . . . Whether a duty exists in a particular case is a question of law." *Walls v. Oxford Management Co.*, 137 N.H. 653, 656, 633 A.2d 103, 104 (1993) (quotation omitted). "[P]rivate persons have no general duty to protect others from the criminal acts of third persons." *Id.* "Such a duty may arise, however, if a special relationship exists." *Marquay v. Eno*, 139 N.H. 708, 716, 662 A.2d 272, 278 (1995). The plaintiff argues that a jury could have reasonably found that the bank breached a duty arising from a special relationship. "The relation of the parties determines whether any duty to use due care is imposed by law upon one party for the benefit of another." *Id.* at 716, 662 A.2d at 279 (quotation omitted). We decline to hold that the relationship between a bank and its customer, under the facts of this case, gives rise to a special duty to protect the customer from the fraudulent conduct of third parties that the law would not otherwise impose. *See generally* W. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 33, at 201-02 (5th ed. 1984)(citing examples of special relationships). Moreover, while parties may contractually agree to undertake duties the law does not impose, *see id.* at 202, the plaintiff points to no provision in the parties' contract in which the defendant agreed to protect her from the fraudulent activities of others. Accordingly, we conclude that no reasonable juror could have found that the defendant breached a duty of care arising from a special relationship.

■ The plaintiff further contends that the bank assumed a duty because after Cheney became suspicious, she called the plaintiff to confirm that the plaintiff wanted the transaction to occur. According to the plaintiff, once the bank undertook this investigation, it had a duty to exercise reasonable care in carrying it out. The plaintiff argues a reasonable investigation means that the bank was required to insist that she personally appear before a bank representative to acknowledge the voluntary nature of the transaction. We hold as a matter of law that the bank did not undertake a duty to protect the plaintiff by merely inquiring whether she wanted to make the transaction. The fact that the bank employee did not believe under the facts of this case that the depositor's actions were wise did not impose a duty on the bank to try and stop the depositor by making the process more difficult or lengthy. *Cf. Robinson v. Colebrook Savings Bank*, 109 N.H. 382, 385-86, 254 A.2d 837, 839-40 (1969).

Finally, the plaintiff suggests that RSA 161-F:46 (Supp. 1998) placed an affirmative duty upon the bank to report its suspicion that she was being exploited by Ward. RSA 161-F:46 provides: "Any person, including, but not limited to, physicians, other health care professionals, social workers, clergy, and law enforcement officials, having reason to believe that any incapacitated adult protected under the provisions of this subdivision has been subjected to . . . exploitation . . . shall report or cause a report to be made . . . ." Even if the bank was required to report under the statute, its failure to do so cannot be the basis for civil liability where no common law duty exists and the legislature has not expressly or implicitly created such liability. *See Marquay*, 139 N.H. at 714-15, 662 A.2d at 277-78. RSA 161-F:42-:57 (1994 & Supp. 1998) contains no express provision creating liability for failure to report, and the plaintiff does not argue that such liability is implicit. Accordingly, we conclude that no reasonable juror could have found liability premised upon a failure to report under RSA 161-F:46. *Cf. Marquay*, 139 N.H. at 715-16, 662 A.2d at 278 (holding no private cause of action under child abuse reporting statute).

*Affirmed.*

BRODERICK, J., did not sit; the others concurred.