Merrimack
No. 97-585

TRACY SCHNEIDER

v.

PLYMOUTH STATE COLLEGE & a.

December 16, 1999

*Douglas, Robinson, Leonard & Garvey, P.C.*, of Concord (*Charles G. Douglas, III* and *Susanna G. Robinson* on the brief, and *Mr. Douglas* orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Joseph M. McDonough, III* and *Dyana J. Crahan* on the brief, and *Mr. McDonough* orally), for the defendants.

BROCK, C.J. After a jury trial in Superior Court (*Smukler*, J.), the defendants, Plymouth State College (PSC) and the University System of New Hampshire, appeal from a verdict in favor of the plaintiff, Tracy Schneider, for injuries she suffered while she was a student as a result of sexual harassment by a former PSC professor. We affirm in part and remand in part.

The plaintiff enrolled at PSC in the fall of 1987 as an eighteen-year-old freshman. During her sophomore year, she enrolled in a graphic design course taught by Professor Leroy Young. The plaintiff enjoyed the course and found Professor Young motivating and encouraging. After having a second positive experience in another course with Professor Young the following year, the plaintiff decided to major in graphic design. Professor Young was PSC's only graphic design professor, and he became the plaintiff's academic advisor.

The defendants do not dispute that in the summer of 1990, Professor Young began a pattern of sexual harassment and intimidation of the plaintiff. Young's behavior included pressuring the plaintiff to accompany him on trips to various locations off campus, kissing her, sending her flowers, taking off her shirt, and placing her hand on his genitalia. Young's conduct escalated to the point that in January 1991, he completely disrobed in his office while the plaintiff was working on his computer.

When the plaintiff attempted to rebuff Professor Young's advances, he would become angry, yell at her, and threaten to make her life very difficult. Young withheld academic support for her academic work and ridiculed her in front of faculty. He also gave the plaintiff a grade of "C-" for her work as an intern at a graphic design company without ever consulting with her supervisor at the company.

In two papers submitted in courses at PSC, the plaintiff revealed to faculty members that she was being sexually harassed. The plaintiff submitted to Professor Josephine Hayslip a journal entry describing the sexual harassment to which a PSC professor had subjected her. Hayslip reported to Sally Boland, the acting dean of the college, that a student was being sexually harassed by someone in the art department. Hayslip testified that Boland told her that she could not do anything unless the plaintiff came to her.

The plaintiff also related the sexual harassment in a paper submitted to Professor Wendy Palmquist in the spring of 1993. The plaintiff testified that Professor Palmquist took no action in response.

The plaintiff told several friends and fellow students about Professor Young's conduct. In the spring of 1991, one of these students reported Young's conduct to PSC Professor Susan Tucker, although she did not identify the plaintiff. Professor Tucker asked the student to encourage the plaintiff to speak with her directly, and said that she would help the plaintiff report Young's conduct to the administration. Because the plaintiff did not come forward, Tucker did not report the allegations to PSC administrators.

In the fall of 1992, the plaintiff personally described Professor Young's harassment in detail to Professor Annette Mitchell. The plaintiff insisted that she remain anonymous because she feared Professor Young. She did agree, however, to consider coming forward if Mitchell organized other students who were also being harassed to report their experiences as a group.

In the spring of 1993, Professor Mitchell told Robert Morton, the chair of the art department, that a student who wished to remain

anonymous had "a problem" with a professor and did not want to come forward. The plaintiff refused to report Young's conduct to Morton because in 1992 he told her that she "look[ed] old enough to have affairs with married men."

Also in 1993, after more students had told Professor Tucker that Professor Young was sexually harassing a student, who still refused to be named, Tucker, Mitchell, and another professor reported the allegations to PSC's Interim President, Dean Thea Kalikow. Kalikow stated that she could do nothing without a firsthand account of the harassment.

The plaintiff graduated from PSC in the spring of 1993. After learning that two other students had asserted sexual harassment complaints against Professor Young, the plaintiff wrote to Dean Kalikow on October 7, 1993, complaining that Professor Young had sexually harassed her while she was a student at PSC. On March 25, 1994, PSC dismissed Professor Young on the grounds of moral delinquency due to his sexual harassment of the plaintiff.

On May 28, 1995, the plaintiff filed a seven-count writ against the defendants asserting liability under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) (1994) (Title IX), and various State law theories, including breach of fiduciary duty and negligent training and supervision. At the conclusion of her case, the plaintiff voluntarily dismissed all State law claims except the fiduciary duty and negligent training and supervision claims. The remaining State law and Title IX claims were submitted to the jury. The defendants moved for a directed verdict on the fiduciary duty claim. The trial court denied the defendants' motion. The jury returned a verdict in favor of the plaintiff on the Title IX claims and the fiduciary duty claim, and in favor of the defendants on the negligent training and supervision claim. The jury awarded the plaintiff $100,000 in compensatory damages and $15,000 in enhanced compensatory damages. The trial court awarded the plaintiff pre-judgment interest based on her State law claim of breach of fiduciary duty, and attorney's fees and costs pursuant to 42 U.S.C. § 1988(b) (1994 & Supp. 1997) for her Title IX claims. This appeal followed.

On appeal, the defendants argue that the trial court erred in: (1) denying their motion for a directed verdict on the fiduciary duty claim; (2) failing to give a verdict form as proposed by the defendants which would have allowed the jury to make specific findings regarding the plaintiff's claims and the damages to be awarded; (3) applying incorrect legal standards to the Title IX claims; (4) allowing the jury to award enhanced compensatory

damages; and (5) awarding the plaintiff prejudgment interest. We consider each issue in turn.

*I. State Law Claim of Breach of Fiduciary Duty*

The defendants argue that the trial court erred as a matter of law in denying their motion for a directed verdict on the plaintiff's claim of breach of fiduciary duty because no fiduciary relationship exists between post-secondary educational institutions and their students under New Hampshire law, and because the plaintiff failed to introduce any expert testimony regarding the nature and scope of a fiduciary duty. The first ground for appeal presents an issue of first impression.

■ Whether a duty can be imposed upon an entity for the care and protection of a person is a question of law. *See Walls v. Oxford Management Co.*, 137 N.H. 653, 656, 633 A.2d 103, 104 (1993). We review questions of law *de novo. Crown Paper Co. v. City of Berlin*, 142 N.H. 563, 566, 703 A.2d 1387, 1389 (1997).

"A fiduciary relationship has been defined as a comprehensive term and exists wherever influence has been acquired and abused or confidence has been reposed and betrayed." *Lash v. Cheshire County Savings Bank*, 124 N.H. 435, 438, 474 A.2d 980, 981 (1984) (quotation and brackets omitted).

> A fiduciary relation does not depend upon some technical relation created by, or defined in, law. It may exist under a variety of circumstances, and does exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence.

*Id.* at 439, 474 A.2d at 982 (quotation omitted). The party reposing confidence becomes dependent on the fiduciary because he or she must rely on the fiduciary for a particular service. *See* Frankel, *Fiduciary Law*, 71 CAL. L. REV. 795, 800 (1983).

In the context of sexual harassment by faculty members, the relationship between a post-secondary institution and its students is a fiduciary one. *Cf.* Schneider, *Sexual Harassment and Higher Education*, 65 TEX. L. REV. 525, 552 (1987). Students are in a vulnerable situation because "the power differential between faculty and students . . . makes it difficult for [students] to refuse unwelcome advances and also provides the basis for negative sanctions against those who do refuse." Bogart & Stein, *Breaking the Silence:*

*Sexual Harassment in Education*, 64 PEABODY J. EDUC. 146, 157 (1987); *cf.* M. PALUDI, SEXUAL HARASSMENT ON COLLEGE CAMPUSES: ABUSING THE IVORY POWER 85-87 (1990) (discussing student-professor power differential and role in sexual harassment).

██ When the plaintiff enrolled at PSC, she became dependent on the defendants for her education, thereby requiring them "to act in good faith and with due regard" for her interests. *Lash*, 124 N.H. at 439, 474 A.2d at 982. The relationship between students and those that teach them is built on a professional relationship of trust and deference, rarely seen outside the academic community. As a result, we conclude that this relationship gives rise to a fiduciary duty on behalf of the defendants to create an environment in which the plaintiff could pursue her education free from sexual harassment by faculty members.

It would be prudent for educational institutions "to adopt and enforce practices that will minimize the danger that vulnerable students will be exposed to [sexual harassment]." *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 300 (1998) (Stevens, J., dissenting). "A well-designed and implemented grievance procedure will deal effectively with faculty misconduct, provide an accessible and fair forum for student complaints, and promote the creation of an environment in which sexual harassment is not tolerated." Schneider, *supra* at 574.

Finally, our conclusion that a fiduciary relationship existed between the defendants and the plaintiff does not rest on the *in loco parentis* doctrine. In *Marquay v. Eno*, 139 N.H. 708, 717-18, 662 A.2d 272, 279 (1995), we held that a special relationship exists between primary and secondary schools and their students, and that that relationship imposes a duty of care upon schools to protect students who they know or should know are being sexually abused by school employees. We based our conclusion in part on the role of schools as parental proxies over minor students. *See id.* at 717, 662 A.2d at 279. In contrast, the fiduciary relationship in this case rests on the unique relationship described above.

We also reject the defendants' argument that the trial court erred in denying their motion for a directed verdict because she failed to introduce expert testimony regarding the nature and scope of a fiduciary duty.

"Our standard of review of a trial court's denial of motions for directed verdict . . . is extremely narrow." *Weldy v. Town of Kingston*, 128 N.H. 325, 330, 514 A.2d 1257, 1260 (1986). We will uphold the trial court's decision "where sufficient evidence in the

record supports the trial court's ruling. A party is entitled to a directed verdict only when the movant's case is the sole reasonable inference from undisputed facts, and the non-movant's claim is completely without merit." *Id.* (citation and quotation omitted).

The party bearing the burden of proof must introduce expert testimony "if the subject matter in dispute is beyond the general understanding of a jury." *State v. Hungerford*, 142 N.H. 110, 120, 697 A.2d 916, 921 (1997).

> Further, expert testimony is required when the issues in a case are particularly esoteric or when the matter to be determined by the trier of fact is so distinctly related to a particular science, occupation, business, or profession that it is beyond the ability of the average layperson to understand.

*Id.* at 120, 697 A.2d at 921-22.

■ We conclude that the plaintiff did not need to introduce expert testimony to meet her burden of proof. In its jury charge, the trial court explained that "[a] fiduciary relationship exists whenever special confidence has been placed in another," and that "[a] breach of a fiduciary relationship results whenever influence has been acquired and abused or confidence has been reposed and betrayed." These concepts are not beyond the ability of the average layperson to understand. *See id.* at 120, 697 A.2d at 921. Therefore, the trial court properly denied the defendants' motion for a directed verdict.

*II. Verdict Form*

The defendants next argue that the trial court abused its discretion by failing to use their proposed verdict form. They state that the verdict form used by the trial court makes it impossible to determine what percentages of the $100,000 compensatory damage award are attributable to the Title IX and fiduciary duty claims, respectively.

■ This argument was not preserved because the defendants did not request a special verdict on damages. *See Snow v. American Morgan Horse Assoc.*, 141 N.H. 467, 472, 686 A.2d 1168, 1172 (1996) (issue not preserved at trial waived on appeal). In fact, the verdict form used by the trial court mirrors the defendants' proposed verdict form in asking the jury for a general verdict on the amount of compensatory damages that the plaintiff should receive. Accordingly, we reject this argument.

## III. Title IX Claims

The defendants argue that the trial court made several errors with respect to the plaintiff's Title IX claims, including that the trial court erred in applying a standard of strict liability to the plaintiff's claim of *quid pro quo* sexual harassment and a standard of constructive notice/negligence to her claim of "hostile environment" sexual harassment. The plaintiff concedes that the trial court applied incorrect legal standards. She argues, however, that the defendants are not entitled to judgment as a matter of law and that the Title IX claims should be remanded.

■ We need not reach these issues, however, because the defendants did not request a special verdict on damages and because we affirm the jury's verdict on the fiduciary duty claim. 5 AM. JUR. 2D *Appellate Review* § 830 (1995).

In view of statements made by plaintiff's counsel at oral argument and the result reached on appeal, we do not address issues related to the Title IX claims and remand for such future proceedings as may be deemed appropriate.

## IV. Award of Enhanced Compensatory Damages

The defendants argue that the trial court erred in allowing the jury to award enhanced compensatory damages for the plaintiff's claim of breach of fiduciary duty. "The test for determining whether an erroneous civil jury charge is reversible error is whether the jury *could have been* misled." *Broderick v. Watts*, 136 N.H. 153, 164, 614 A.2d 600, 607 (1992) (quotation omitted).

■ The trial court correctly instructed the jury that it could award enhanced compensatory damages only if it found that the defendants' conduct was wanton, malicious, or oppressive. *See Panas v. Harakis & K-Mart Corp.*, 129 N.H. 591, 608, 529 A.2d 976, 986 (1987). Further, the trial court stated that the jury could award enhanced compensatory damages only on the plaintiff's claims of negligence and breach of fiduciary duty, and not on the Title IX claims. These instructions were clear. They could not have misled the jury and, therefore, were not erroneous. *See Broderick*, 136 N.H. at 164, 614 A.2d at 607.

The defendants also argue that there was insufficient evidence to support an award of enhanced compensatory damages. "In reviewing damages awards, we will consider the evidence in the light most favorable to the prevailing party, and we will not disturb the decision of the factfinder unless it is clearly erroneous." *Great*

*Lakes Aircraft Co. v. City of Claremont*, 135 N.H. 270, 295, 608 A.2d 840, 856 (1992).

■ The jury's determination that the defendants' conduct was wanton or oppressive was supported by the defendants' failure to investigate promptly and vigorously the allegations of Professor Young's conduct that were reported to PSC professors and administrators. *See Panas*, 129 N.H. at 608, 529 A.2d at 986. Therefore, the award of enhanced compensatory damages was not clearly erroneous. *See Great Lakes Aircraft Co.*, 135 N.H. at 295, 608 A.2d at 856.

### V. Award of Prejudgment Interest

The defendants' final argument is that the trial court erred in awarding the plaintiff prejudgment interest based on her recovery on the fiduciary duty claim.

The defendants argue that because the plaintiff received a general verdict on damages and then sought to recover her costs and attorney's fees with respect to her Title IX claims, she waived her right to recover prejudgment interest under State law. This argument is without merit.

■ New Hampshire law provides for prejudgment interest to be awarded in "civil proceedings at law . . . in which a verdict is rendered or a finding is made for pecuniary damages to any party." RSA 524:1-b (1997). RSA 524:1-b does not limit the award to situations in which the verdict is based only on a State law claim. Therefore, there is no reason why a plaintiff who obtains verdicts on both State and federal claims and seeks to recover attorney's fees pursuant to a federal statute may not seek prejudgment interest on the award of damages for the State law claim. Doing so would not result in a double recovery. Accordingly, we conclude that the trial court properly awarded the plaintiff prejudgment interest on the award of damages for her fiduciary duty claim.

In sum, we affirm the trial court's decisions to deny the defendants' motion for a directed verdict on the plaintiff's fiduciary duty claim, to permit the jury to award enhanced compensatory damages, and to award the plaintiff prejudgment interest. We remand issues relating to the Title IX claims.

*Affirmed in part; remanded in part.*

BRODERICK, J., did not sit; THAYER, J., sat but did not participate in the decision; the others concurred.