Sullivan
No. 93-113

STANLEY F. PATCH & *a.*

v.

JOHN P. ARSENAULT & *a.*

January 20, 1995

*Daschbach, Kelly & Cooper, P.A.,* of Lebanon (*Joseph F. Daschbach* on the brief and orally), for the plaintiffs.

*Clauson & Smith,* of Hanover (*K. William Clauson* on the brief and orally), for defendants John P. and Lisa M. Arsenault.

*Law Office of Robert I. Morgan,* of Claremont (*Robert I. Morgan* on the brief and orally), for defendant Highview Realty, Inc. d/b/a Century 21 Highview Realty.

HORTON, J.  The plaintiffs, Stanley F. and Helen M. Patch, appeal a judgment of the Superior Court (*Morrill,* J.) in favor of defendants John P. and Lisa M. Arsenault, and dismissing defendant Highview Realty, Inc. d/b/a Century 21 Highview Realty (Highview Realty). We affirm.

In the summer of 1988, the Patches purchased a twenty-eight-by-eight-foot pontoon boat and sought dock space on Lake Sunapee as well as a nearby residence. In August 1988, agents of Highview Realty showed the Patches one of three condominiums that the Arsenaults had recently converted from an older building on a hillside facing the

lake. The listing sheet provided by Highview Realty stated that the condominium was in "excellent" condition and included use of the eastern half of a forty-foot dock via a deeded right-of-way. The Patches purchased the unit for $180,000, contingent upon their twenty-eight-by-eight-foot boat being accommodated on Lake Sunapee. The Patches were able to dock their boat suitably all but once during the 1988 boating season. The exception occurred when their neighbor moored the larger of his two boats on the western half of his dock, leaving less room for the Patches to perform their docking maneuvers. After some discussion, the neighbor agreed to maintain his large boat on the eastern half of his dock. During the 1989 boating season, the owners of the waterfront property encumbered by the right-of-way and dock notified the Patches that the dock had been moved at least five feet to the west of its deeded position. Although the deed does not expressly define the proper location of the dock, it refers to documents which confirmed that the forty-foot-long dock was out of position. After the complaint by the owners of the encumbered waterfront property, Mr. Patch notified Mr. Arsenault, who moved the dock back to its deeded position in the summer of 1989. Since the dock was moved back, the Patches have complained of difficulties docking in the narrower slip. The Patches also learned that the dock had been rebuilt by the defendants' predecessors-in-interest under a permit issued by the New Hampshire Board of Wetlands in 1977 for a dock of only thirty feet, some ten feet less than the length of the present dock. In 1985, however, the board stated that it planned to take no action regarding the length.

The Patches also experienced problems with the electrical system in their condominium. A State electrical inspector found numerous violations of the electrical safety standards, which were remedied at the Arsenaults' expense. The Patches now consider their condominium uninhabitable due to concerns about possible concealed electrical problems that may pose a risk of fire. Finally, the Patches allege that poor water drainage around the condominium has caused damage to the unit below them and will affect their unit if foundation and structural problems result. The Arsenaults maintain that the problems are either cosmetic or have been repaired. In January 1991, the Patches tendered their quitclaim deed to the Arsenaults due to the problems with the dock, electrical wiring, and water drainage. The Arsenaults refused the deed and this action ensued.

The Patches brought a damages claim against the Arsenaults' real estate brokers, Highview Realty, based upon intentional or negligent misrepresentation, and sought rescission and restitution from the Arsenaults under the civil remedy provision of the Condominium Act, RSA 356-B:65 (1984), based upon misrepresentations regarding the

water drainage, dock, and electrical problems. Alternatively, they sought equitable rescission and restitution, based upon either the same grounds or mutual mistake. The Patches initially sought damages from the Arsenaults but withdrew that claim before trial. Following a nonjury trial, the superior court dismissed the claim against Highview Realty because the Patches failed to prove their case of tortious misrepresentation, and granted judgment in favor of the Arsenaults on the Patches' claims for rescission and restitution.

On appeal, the Patches argue: (1) the trial court erred under RSA 356-B:65 in assigning the burden of proof to the Patches as to the Arsenaults' knowledge of the untruth of representations; (2) the judgment in favor of the Arsenaults and the denial of the Patches' request for related findings of fact are not supported by the evidence; (3) the dismissal of Highview Realty and the denial of the Patches' request for related findings of fact are not supported by the evidence; and (4) the trial court erred in relying upon an exhibit not offered into evidence. The Arsenaults cross-appeal, arguing that the civil remedy section of the Condominium Act does not apply to the sale of their unit.

We begin with the cross-appeal. The Arsenaults contend that RSA 356-B:65, upon which the Patches base their statutory rescission and restitution claim, does not apply to condominiums which, like the Arsenaults', contain ten or fewer units. We agree. "The issue before us is a matter of statutory construction; accordingly, we must begin our analysis by considering the plain meaning of the words of the statute." *Gilmore v. Bradgate Assocs.*, 135 N.H. 234, 237, 604 A.2d 555, 556 (1992).

■ The provisions of the Condominium Act generally apply "to all condominiums and to all condominium projects." RSA 356-B:2, I (1984). Condominiums of ten or fewer units, however, are expressly exempted from subdivision IV, the act's administration and enforcement provisions: "Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this subdivision do not apply to offers or dispositions of any interest in a condominium unit . . . [i]f not more than 10 units are included in the condominium." RSA 356-B:49, I (1984); *cf.* RSA 356-B:2, III (1984) (subdivision IV applies to condominium instruments recorded under prior law only when instrument amended to create ten or more additional units). The civil remedy section, RSA 356-B:65, falls within subdivision IV. The trial court made no finding, and the parties did not plead, that in this case "the method of disposition [was] adopted for the purpose of evasion of this chapter." RSA 356-B:49, I.

"When the language of a statute is plain and unambiguous, we will construe that statutory language according to its common and approved usage." *Concord Steam Corp. v. City of Concord*, 128 N.H.

724, 729, 519 A.2d 266, 270 (1986). In light of the plain language of RSA 356-B:49, I, we hold that because the Arsenaults' condominium project contains only three units, the sale to the Patches is exempt from the administration and enforcement provisions of the Condominium Act, including the civil remedy section found at RSA 356-B:65.

Our holding on this issue renders unnecessary a review of the Patches' claim regarding the burden of proof in statutory rescission and restitution claims under the Condominium Act. As for the common law claim, the trial court properly assigned the burden of proof as to the knowledge of the untruth of statements to the plaintiffs. *See Vannote v. Laurie*, 122 N.H. 952, 954, 453 A.2d 1252, 1253 (1982).

We now turn to the Patches' contention that the judgment in favor of the Arsenaults on the equitable rescission and restitution claim and the denial of the Patches' request for related findings of fact were not supported by the evidence. We disagree. "Findings and rulings falling within the discretion of the trial court will be upheld unless they are unsupported by the evidence or are erroneous as a matter of law." *Zimmerman v. Suissevale, Inc.*, 121 N.H. 1051, 1054, 438 A.2d 290, 292 (1981). This standard of review requires us to determine "whether or not a reasonable [person] could have reached the same decision as the trial court based on the evidence before it." *Id.* We will briefly review the facts and findings pertinent to this allegation.

■ Highview Realty's listing sheet represented that the condominium was in "excellent" condition and included use of the eastern half of a forty-foot dock via a deeded right-of-way. The Patches maintain that due to the water drainage and electrical wiring problems, the condominium was not in "excellent" condition, and that the dock and slip were not suitable for their boat. The Patches seek equitable rescission and restitution on the basis that the Arsenaults, through their agents, misrepresented the docking facilities and the condition of the condominium, or, alternatively, because the parties were mutually mistaken as to those two issues. We note that although the Arsenaults apparently had no communication with the Patches prior to the closing, they are responsible for any representations made by their agent, Highview Realty. *See Maxwell Ice Co. v. Company*, 80 N.H. 236, 238–39, 116 A. 34, 35 (1921).

■ Equitable rescission and restitution may be ordered where material misrepresentations reasonably relied upon induce the injured party to enter into a transaction. *See Barber v. Somers*, 102 N.H. 38, 42, 150 A.2d 408, 411 (1959). Rescission and restitution may also be available where the parties are mutually mistaken about a material, basic assumption of the contract that induced the parties to contract. *See Derouin v. Granite State Realty, Inc.*, 123 N.H. 145, 147, 459 A.2d

231, 232 (1983). In contrast to damages, equitable rescission and restitution is a complete remedy which restores the injured party to the position occupied before the transaction. *See id.*; 5 A. CORBIN, CORBIN ON CONTRACTS § 1104 (1964 & Supp. 1993); RESTATEMENT (SECOND) OF CONTRACTS § 373(1) (1981). Consequently, this remedy is available only where the contractual breach is of vital importance, *see* CORBIN, *supra*; RESTATEMENT (SECOND) OF CONTRACTS § 373(1), and should be granted only "when in all the circumstances it appears right and just to the parties to do so," *Barber*, 102 N.H. at 43, 150 A.2d at 411. Rescission and restitution is an equitable remedy, "the granting of which is always a matter within the sound discretion of the trial court." *Derouin*, 123 N.H. at 147, 459 A.2d at 233.

■ Regarding the water incursions, the trial court determined that "the water problem has minimally [a]ffected the Patches' second floor unit and their worries about more serious, future damage [are] speculative." As for the dock and boat slip, the trial judge concluded, "I am persuaded from the evidence, including the view, that the dock will accommodate the Patches' party boat. At times, the wind, level of the lake, and the position of their [neighbor's] dock to the east, make docking difficult, but not impossible." The court also found that although the present dock might be technically illegal for exceeding its permitted length of thirty feet, "not only has the Wetlands Board indicated no interest in acting, a dock of thirty feet is adequate to accommodate the Patches' boat." The court held "that neither the Arsenaults nor their agents made any material misrepresentation about the capacity of the dock to accommodate the Patches' boat. Likewise, the Arsenaults did not breach their contractual promises about the dock." Because we find that the record contains evidence on which the trial court could reasonably base its findings, we uphold its conclusion that no material misrepresentation occurred regarding the docking facilities or water incursions. *Zimmerman*, 121 N.H. at 1054, 438 A.2d at 292.

As for the electrical wiring, the court ruled that "[t]he Arsenaults, through their real estate agents, innocently represented the condition of the unit as excellent. Because of the defective electrical installation that representation was partially false." Specifically, the court found that the electrical system "was shoddy and violated the National Electric Code" and that "[g]iven the substandard electrical work, other hidden defects probably exist and some of them possibly pose a risk of fire or shock."

■ The court declined to grant equitable rescission and restitution because it found that the electrical problems did not constitute a total breach of the contract and that the misrepresentation or mutual

mistake did not induce the Patches to purchase the condominium. The trial judge, in his discretion, held that "the Patches may not have received what they bargained for, but the harm they may have suffered is disproportionately small when compared to the remedy they seek." The court noted that although the misrepresentation was significant enough that an award of damages might have been warranted, the Patches withdrew their damages claim against the Arsenaults before trial. We have reviewed the record and affirm the trial court's findings of fact and conclusions of law related to this issue. *Zimmerman*, 121 N.H. at 1054, 438 A.2d at 292.

The Patches next contend that the trial court erred in dismissing their damages claim against Highview Realty and in denying their request for related findings of fact. We disagree. The Patches alleged that Highview Realty intentionally or negligently misrepresented the size of the dock and boat slip and the condition of the condominium. At the conclusion of the Patches' case, the trial judge granted Highview Realty's motion to dismiss, finding that the evidence presented by the Patches failed to establish their case under the standard set forth in *Renovest Co. v. Hodges Development Corp.*, 135 N.H. 72, 75–78, 600 A.2d 448, 451–52 (1991). Under the *Renovest* standard, where the trier of fact is the trial judge, the judge

> may make findings of fact at the close of the plaintiff's case-in-chief, and may use such facts to determine whether the plaintiff has established the case by a preponderance of the evidence. On appeal, we will not overrule these findings of fact, unless they are clearly erroneous, nor will we reverse the dismissal based thereon unless it is inconsistent with the findings or otherwise contrary to law.

*Id.* at 78, 600 A.2d at 452.

The tort of intentional misrepresentation, or fraud, must be proved by showing that the representation was made with knowledge of its falsity or with conscious indifference to its truth and with the intention of causing another person to rely on the representation. *See Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 46–47, 534 A.2d 706, 709 (1987). Claims for negligent misrepresentation in sales of real estate are judged by the following standard: "It is the duty of one who volunteers information to another not having equal knowledge, with the intention that he will act upon it, to exercise reasonable care to verify the truth of his statements before making them." *McCarthy v. Barrows*, 118 N.H. 173, 175, 384 A.2d 787, 788 (1978) (quotation omitted).

The court dismissed the claim against Highview Realty, under the *Renovest* standard, because the Patches failed to prove that the broker

knew or should have known that he spoke an untruth. *See Renovest,* 135 N.H. at 78, 600 A.2d at 452. The court found that the electrical problems and the water damage cited by the Patches were latent and not easily observable upon investigation of the property by Highview Realty. Regarding the boat slip, the court found that "[a] reasonable examination of the premises at the time the agents assured the Patches that the dock was adequate would not have uncovered the difficulties, which the Patches allege they encountered later." A review of the record and the trial judge's findings of fact related to this claim supports the court's conclusion that the Patches failed to establish intentional or negligent misrepresentation by a preponderance of the evidence, and thus we affirm. *See Renovest,* 135 N.H at 78, 600 A.2d at 452.

The Patches' final claim is that the trial court erred in relying upon an exhibit not offered into evidence. The assignment of error stems from the following statement by the trial judge in his order:

> Since my conclusions are simple, it is unnecessary to recount all the evidence submitted about the history, construction, and positioning of Harbor House's dock and the surrounding docks. I am persuaded from the evidence, including the view, that the dock will accommodate the Patches' party boat. At times, the wind, level of the lake, and the position of their [neighbor's] dock to the east, make docking difficult, but not impossible. *See* Defendants' ex. C.

The Patches argue that "Defendants' ex. C" is a "Videotape of 7/3/91 Boat Docking" that was never admitted into evidence. A review of the entire record leads us to conclude that even if the videotape was never properly entered as an exhibit, the trial court's reliance upon it resulted in no prejudice to the Patches and did not affect the outcome. *See Welch v. Gonic Realty Trust Co.,* 128 N.H. 532, 537–38, 517 A.2d 808, 811 (1986). The trial judge found that "[e]veryone who viewed the property prior to the purchase agreed that the dock appeared to be sufficient to accommodate the plaintiff's boat." We therefore hold that even if the court erred in relying upon this exhibit, that error was harmless. *See id.*

*Affirmed.*

JOHNSON, J., did not sit; the others concurred.