### In re R & R ASSOCIATES OF HAMPTON, Debtor.

**Dennis Bezanson, Trustee of the Estate of R & R Associates of Hampton, Appellant,**

v.

**Thomas J. Thomas, Jr., et al., Appellees.**

No. 04–1610.

United States Court of Appeals, First Circuit.

Heard Oct. 4, 2004.

Decided March 31, 2005.

William S. Gannon, for appellant.

Robert M. Daniszewski, with whom Danis Lewis Law Office was on brief for appellees.

Before LIPEZ, Circuit Judge, COFFIN and CYR, Senior Circuit Judges.

CYR, Senior Circuit Judge.

Dennis Bezanson, chapter 7 trustee for the bankrupt estate of R & R Associates of Hampton ("R & R"), appeals from a bankruptcy court ruling that counsel who previously had served as chapter 11 counsel to R & R, notwithstanding a disqualifying conflict of interest, nonetheless were not liable in damages, either for malpractice or breach of fiduciary duty. We vacate the judgment and remand for the entry of judgment for Bezanson.

## I

### BACKGROUND

Reginald L. Gaudette and Richard V. Choate are the general partners of R & R, and at all times were personally liable for the partnership debts. See N.H.Rev.Stat. Ann. § 304–A:15. The commercial real estate located at 81 Ocean Boulevard in Hampton, New Hampshire, constituted the only significant asset of R & R.

In the fall of 1990, Gaudette retained a law firm, comprised of partners Thomas J. Thomas, Jr., Mitchell P. Utell, Marc L. Van DeWater, and Glenn C. Raiche (hereinafter: "the Thomas law firm" or "the defendants"), to arrange for the transfer of approximately $700,000 worth of Gaudette's individually-owned property to several family limited partnerships ("FLPs") for the admitted purpose of safeguarding those assets from attachment by Gaudette's creditors. See, e.g., FLP 1 Agreement ¶ 6.2 ("The earnings of the Partnership shall be distributed at least annually except that earnings may be retained by the Partnership and transferred to Partnership capital for the reasonable needs of the business as determined in the sole discretion of the General Partner."); id. ¶ 9.3 ("The General Partner may terminate the interest of a Limited Partner and expel him ... if ... his [FLP] interest becomes subject to attachment."). Moreover, acting on the advice of Gaudette, and with defendants' assistance, Choate transferred a substantial, though unspecified, quantity of individually-held assets into FLPs. The defendants represented Gaudette and Choate in state court litigation as well. During this same time period, while the FLPs were being established, Gaudette and Choate consulted the defendants regarding whether to initiate chapter 11 petitions in behalf of the financially troubled R & R and 81 Ocean Boulevard.

Ultimately, in April 1991, the defendants initiated voluntary chapter 11 proceedings in behalf of R & R in the United States Bankruptcy Court for the District of New Hampshire, and R & R, qua debtor-in-possession, sought authorization from the bankruptcy court to retain defendants as general counsel. The Retention Agreement, which was signed by defendant Thomas, vouchsafed to the bankruptcy court, inter alia, that the Thomas law firm possessed "considerable experience" in bankruptcy matters, was "well qualified" to represent R & R, and "ha[d] no connection with the Debtor ... or any party in interest ... nor d[id] this attorney represent or hold any interest adverse to the Debtor–In–Possession or the [chapter 11] estate." See Bankruptcy Code § 327(a). In their supporting affidavit, see Fed. R. Bankr.P.2014, defendants again stated that they had "no connection with the debtor in this matter," stated that they were "disinterested persons," and opined that they

could "undertake representation of the Debtor in Possession in this case without any type of restriction." Defendants failed to disclose their *ongoing* legal representation of Gaudette and Choate individually, including their ongoing diversion of their personal assets into new FLPs. In reliance on the information provided, the bankruptcy court approved the Retention Agreement without notice or hearing.

The defendants submitted a Statement of Financial Affairs to the bankruptcy court which estimated that the R & R real estate (*viz.,* 81 Ocean Boulevard) was worth approximately $1.25 million, and that its liabilities thus exceeded its total assets by approximately $150,000. The Statement of Financial Affairs made no mention of any contingent "contribution" claims of the debtor estate against its general partners pursuant to N.H.Rev.Stat. Ann. § 304–A:15.

At a status conference in August 1991, however, the defendants apprised the bankruptcy court that in the past four months their estimate of the value of 81 Ocean Boulevard had plummeted from $1.2 million to $500,000. When the court inquired of the defendants whether "[Gaudette's and Choate's] personal assets [were] going to be disclosed and be available to cover any shortfall," the defendants responded in the affirmative. The defendants have since conceded, however, that they had no knowledge as to the value of Gaudette and Choate's unencumbered personal assets, nor had they undertaken at any time to inquire into the matter.

The reputed value of the 81 Ocean Boulevard property continued its precipitous decline. In their May 1992 status report, the defendants disclosed that the estimated worth of the property had declined to a mere $265,000. Given the rapidly dwindling prospects of any successful reorganization, the R & R chapter 11 proceedings

were converted to chapter 7 in June 1992, and Bezanson was appointed the chapter 7 trustee.

The defendants complied with Bezanson's request to provide the general partners' raw financial records, but neither notified Bezanson of the FLPs nor of their part in executing the FLPs. The Gaudette financial statements disclosed a negative net worth of approximately $4 million. In September 1996, Gaudette submitted a chapter 7 petition in his own behalf. The bankruptcy court awarded defendants $18,887 in attorney fees for their efforts as counsel to R & R. The value of its principal asset having been dissipated, the chapter 7 estate of R & R ended in a net deficit of $412,000.

Thereafter, in October 1998, Bezanson commenced the instant adversary proceeding against the defendants, alleging their negligent representation of R & R during the chapter 11 proceedings, and the breach of their respective fiduciary duties to the chapter 11 debtor. In addition, Bezanson demanded, *inter alia,* $412,000 in damages—the amount of the deficiency in the chapter 7 estate which might otherwise have been covered by Gaudette's and Choate's personal assets had those assets not been diverted into the FLPs with defendants' assistance.

## A. *The First Bankruptcy Court Decision*

Following a seven-day trial, the bankruptcy court determined that the defendants' conceded failure to disclose their legal representation of Gaudette and Choate in connection with the FLPs violated the disclosure requirements prescribed by the Bankruptcy Code for the retention of counsel by a chapter 11 debtor, and that this failure to *disclose* their conflict of interest warranted disgorgement of the $18,887 in counsel fees defendants received

as chapter 11 counsel. *Bezanson v. Thomas* (*In re R & R Assocs. of Hampton*), No. 91–10983–MVW, 2003 WL 1233047, at *5 (Bankr.D.N.H. Jan.31, 2003) (unpublished opinion); *see generally Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir.1994).

The bankruptcy court then stated:

The issue before this Court is not whether the legal services were performed properly, but whether the law firm failed to disclose adverse interests as required by section 327. Stated differently, the issue before this Court is whether the Law Firm Defendants complied with the requirements of sections 327 and 328, not whether the legal services performed were adequate, an inquiry which would properly be the subject of a *subsequent* malpractice suit.

*Id.* at 4 (emphasis added). In the course of treating the "other issues raised by the Trustee," the bankruptcy court determined that (i) counsel for a chapter 11 debtor has no duty to bring suit against the debtor's general partners to compel a contribution of their personal assets to defray a deficiency in the chapter 11 estate, due to the fact that Bankruptcy Code § 723, which prescribes such a contribution action, simply does not apply in chapter 11 cases; and (ii) the defendants credibly testified that they believed that R & R could be successfully reorganized without further capital contributions from Gaudette and Choate, and that Gaudette and Choate possessed "substantial financial wealth" which would be available should such capital contributions be required. *Bezanson,* 2003 WL 1233047, at *5.

The bankruptcy court further held that the defendants had not breached their fiduciary duty to Bezanson by providing him with "false" financial statements for Gaudette, given that the statements disclosed that Gaudette owned three limited partnership interests, and that Bezanson made no further inquiry either into the nature of or the circumstances in which Gaudette had acquired those interests. *Id.* Finally, the bankruptcy court rejected the Bezanson claim that the defendants' failure to disclose constituted fraud on the court, as it found no evidence that the failure to disclose was motivated by a "corrupt intent." *Id.* at 6. Bezanson timely appealed to the district court.

## B. *The First District Court Decision*

On appeal, the district court vacated the bankruptcy court decision, noting that the bankruptcy court intimated that the trustee must litigate the adequacy of defendants' legal representation of the chapter 11 debtor in "a *subsequent* malpractice suit," and thus failed expressly to consider and resolve Bezanson's discrete claims for negligent legal representation and breach of fiduciary duties. *Bezanson v. Thomas,* No. 03–127–JD, 2003 WL 21434911, at *4 (D.N.H. June 20, 2003) (emphasis added). Accordingly, the district court remanded the case for further proceedings and/or factfinding.

## C. *The Second Bankruptcy Court Decision*

On remand, in an unpublished decision, the bankruptcy court determined that the defendants were entitled to judgment on the malpractice and breach of fiduciary duty claims. First, it held that Bezanson was not entitled to sue the defendants on these claims because R & R had ceased to exist as a debtor in possession when the case was converted from chapter 11 to chapter 7 in June 1992, terminating defendants' duty to R & R; defendants never represented Bezanson during the chapter 7 proceedings.

Second, the bankruptcy court relied upon the following findings of fact to support its judgment for defendants: (i) the defendants "believed" that R & R would

reorganize successfully and emerge from chapter 11 without any additional capital contributions from Gaudette and Choate; (ii) the defendants "believed" that Gaudette and Choate had sufficient attachable personal assets (*viz.*, apart from their FLP interests) to cover any unexpected deficiency in the assets of the chapter 11 estate to enable a successful reorganization; (iii) Bezanson failed to adduce clear and convincing evidence that the defendants acted with the requisite fraudulent intent to conceal the existence of the FLPs, which were duly recorded in the public records; (iv) the defendants provided Bezanson with financial statements which were neither false nor misleading, but instead disclosed the existence of three limited partnership interests, and Bezanson failed to inquire further into the nature of those FLPs; and (v) whether or not the FLPs would shield Gaudette's and Choate's individual assets from their creditors, Gaudette and Choate had received valid consideration in return for their transfer of assets into the FLPs.

### D. *The Second District Court Decision*

On appeal, the district court affirmed. Although it acknowledged that the bankruptcy court's rationale lacked "detail and explanation," and that its conclusions were "somewhat opaque," the district court nevertheless determined that Bezanson had waived his primary "clearly erroneous" challenge to the bankruptcy court's factfinding by failing to include in the appellate record his written requests for findings of fact and conclusions of law. Bezanson now appeals from the district court decision which affirmed the bankruptcy court ruling on remand.

## II

### DISCUSSION

■ Following an intermediate appeal to the district court, the findings of fact made by the bankruptcy court are independently reviewed by the court of appeals for clear error and its conclusions of law de novo. *See In re McMullen,* 386 F.3d 320, 324 (1st Cir.2004); *see also In re Schifano,* 378 F.3d 60, 66 (1st Cir.2004) (noting that court of appeals "owes no particular deference to the conclusions of the [intermediate appellate tribunal]"). The bankruptcy court findings will be considered clearly erroneous if, after a review of the entire record, we are " 'left with the definite and firm conviction that a mistake has been committed.' " *In re Watman,* 301 F.3d 3, 8 (1st Cir.2002) (citation omitted). If, however, we determine that the bankruptcy court findings are too vague or incomplete to enable meaningful appellate review, we may remand to the bankruptcy court for further proceedings and more explicit findings of fact. *See id.*

### A. *Waiver*

The first matter we consider is the district court's conclusion that Bezanson, by failing to include his 20-page request for findings of fact and conclusions of law (Docket No. 90) in the appellate record before the district court, has waived his right to contend on appeal that the contrary findings made by the bankruptcy court were clearly erroneous. However, Bezanson specifically designated Docket No. 90 as part of the record in *both* appeals before the district court.

### B. *The Standing of the Trustee*

■ Next, we consider the dispositive legal conclusion arrived at by the bankruptcy court: *viz.,* that the duties the defendants owed to the chapter 11 debtor in possession—which were those upon which Bezanson's malpractice and breach of fiduciary duty claims depended—were extin-

guished as a matter of law when the case was converted from chapter 11 to chapter 7, and R & R, *qua* debtor-in-possession, ceased to exist as a legal entity. The bankruptcy court cited no authority in support of this conclusion, and the authority we have found is to the contrary. These claims belonged to the bankrupt estate, and Bezanson, as the successor to the debtor in possession and representative of the estate, plainly is entitled to pursue whatever legal claims belonged to the estate. *See, e.g., In re Eddy*, 304 B.R. 591, 599 (D.Mass.2004) ("If a Chapter 11 case is converted to [a] Chapter 7 case, the appointed Chapter 7 trustee is essentially a successor estate representative ... [who] assumes the powers of the debtor in possession."); *In re Bame*, 251 B.R. 367, 373 (Bankr.D.Minn.2000); *In re Fairbanks*, 135 B.R. 717, 723 (Bankr.N.H.1991), and need detain us no further.

## C. *The Negligent Representation Claim*

The Bezanson adversary proceeding essentially states a legal malpractice claim which Bezanson could have elected to pursue in state court before a jury, *see Taylor–Boren v. Isaac*, 143 N.H. 261, 723 A.2d 577, 580 (1998), but which he nonetheless properly opted to pursue as a "core" adversary proceeding before the bankruptcy court,[1] *see Woodward v. Sanders (In re SPI Communications Mktg., Inc.)*, 112 B.R. 507, 510–11 (Bankr.N.D.N.Y.1990) (noting that the trustee's claims for legal malpractice against chapter 11 debtor's counsel were "core" proceedings). Because defendants are attorneys licensed to practice in New Hampshire, New Hampshire malpractice law applies. *See In re C–Power Prods., Inc.*, 230 B.R. 800, 803 (Bankr.N.D.Tex.

1998) (noting that bankruptcy estate acquires a post-petition legal malpractice claim "with the interests impressed by state law"). Accordingly, Bezanson must demonstrate (i) "an attorney-client relationship, which by law imposes a duty on the attorney 'to exercise care, skill and knowledge in providing legal services to the client' "; (ii) breach of such duty; and (iii) "a connection of legally recognized causation between the breach and the resulting harm to the client." *Draper v. Brennan*, 142 N.H. 780, 713 A.2d 373, 375–76 (1998) (citations omitted).

### 1. *The Duty Under New Hampshire Law*

Under New Hampshire law, the existence *vel non* of a duty poses an issue of law. *See Furbush v. McKittrick*, 149 N.H. 426, 821 A.2d 1126, 1131 (2003). There is no dispute that these defendants entered into an attorney-client relationship with R & R *qua* debtor in possession. *See Draper*, 713 A.2d at 375; *In re Wehringer's Case*, 130 N.H. 707, 547 A.2d 252, 260 (1988) ("[T]he relationship of the lawyer to the client and the court is one of fiduciary underpinnings."). The bankruptcy court focused its inquiry into the nature of the defendants' duties as counsel to the chapter 11 debtor in possession upon a very narrow question, *viz.*, whether the defendants had a duty to sue Gaudette and Choate—most particularly pursuant to the relevant provision in Bankruptcy Code § 723—to compel them to contribute more of their personal assets to cover the burgeoning deficit. Finding no case authority explicitly imposing such a duty, the bankruptcy court implied that Bezanson had failed to identify any cognizable duty

---

1. As we conclude that Bezanson established a legal malpractice claim, *infra*, we need not consider the extent (if any) to which the elements of such a cause of action might differ

from a claim for breach of fiduciary duty under New Hampshire law. *See Schneider v. Plymouth State Coll.*, 144 N.H. 458, 744 A.2d 101, 105 (N.H.1999).

which, if breached, would give rise to a viable claim of legal malpractice. As the focus of the bankruptcy court inquiry was unnecessarily narrow, we cannot accept its conclusion.

■■■■ First, Bezanson's bankruptcy court filings defined the defendants' duties as chapter 11 counsel much more broadly. Trustee Bezanson correctly insisted that counsel to a chapter 11 debtor owe a broad-based duty of care, candor, and undivided loyalty to the chapter 11 debtor. *See* Trustee's Request for Findings of Fact and Rulings of Law ¶ 86 ("As counsel to the Chapter 11 [debtor], Thomas and the other Defendants owed the debtor in possession . . . the duties of care, candor, and undivided loyalty."). As the bankruptcy court itself acknowledged, upon ordering the defendants to disgorge their attorney fees, the source of such a duty arises unambiguously, both from federal bankruptcy law, *see Rome*, 19 F.3d at 62, and from applicable state law, *see, e.g., Draper*, 713 A.2d at 375. "[A]n attorney for a Debtor in Possession employed pursuant to Section 327 represents a client that has the rights, powers and duties of a trustee under Chapter 11. These duties include the maximization of the value of the debtor's assets, and the recovery of property for the benefit of the bankruptcy estate." *In re Ogden Modulars, Inc.*, 207 B.R. 198, 200 (Bankr.E.D.Mo.1997) (citing Bankruptcy Code § 1107). Thus, defendants' loyalty was owed exclusively to the general partnership, which was attempting to marshal assets to achieve a viable reorganization, and not to the personal financial interests of its two general partners. *See* N.H.Rev. Stat. Ann. § 304–A:15 (making general partners personally liable for all partnership debts). The pertinent question of law, therefore, was not merely whether defendants had a discrete duty to bring a § 723 recovery action, but whether the *totality* of defendants' alleged acts (*e.g.*, their assistance in establishing the FLPs) and omissions (*e.g.*, their failure to disclose the FLPs to the court or Bezanson, or to assure that Gaudette and Choate had non-FLP assets from which to make additional contributions to the chapter 11 estate) while serving as chapter 11 debtor's counsel breached this overarching duty of care, candor, and unswerving loyalty.

■■■■ Thus, we conclude that the Bezanson adversary-proceeding complaint met the first criterion for a state-law legal malpractice action by alleging those duties which the defendants owed the chapter 11 debtor.[2]

---

**2.** The defendants contend that Bezanson failed to adduce competent evidence as to the nature of their duties to R & R, in that Bezanson tendered no expert witness. We disagree. Although normally New Hampshire law requires expert testimony to establish duty in a malpractice action, *see Wong v. Ekberg*, 148 N.H. 369, 807 A.2d 1266, 1270–71 (2002); *Follender v. Scheidegg*, 142 N.H. 192, 698 A.2d 1237, 1238 (1997), an exception is made where the existence of a duty ought to be " 'so patent and conclusive that reasonable persons can reach only one conclusion.' " *See Wong*, 807 A.2d at 1271 (citation omitted); *accord O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. 1982) (describing "common knowledge" exception to expert-testimony rule). Here, this criterion is readily demonstrated, in that (i) the case was not tried to a jury, but in a core proceeding before the bankruptcy court, which is amply competent to make a plenary assessment as to which legal duties counsel owed this chapter 11 debtor in possession, *see Wong*, 807 A.2d at 1270 (noting that expert testimony rule is designed to address situations " 'where the subject presented is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average *layperson* ' ") (citation omitted; emphasis added); and (ii) the conflict of interest at issue also contravenes the New Hampshire rules of ethical conduct relating to conflicts of interest, *cf. id.* at 1271 (noting that breach of state ethical rules cannot suffice as *"only"* proof of duty) (emphasis added); *see also* N.H. R. Prof'l Conduct 1.7(a) ("A lawyer shall

## 2. *Breach of Duty*

 Under New Hampshire law, the question as to whether the defendants in a legal malpractice case breached a duty is for the factfinder. *See Furbush,* 821 A.2d at 1131. The bankruptcy court held that the defendants did not breach a duty to the chapter 11 debtor for three basic reasons: (i) the defendants believed that a reorganized R & R would emerge successfully from chapter 11 without the need to obtain any additional capital contributions from Gaudette and Choate; (ii) the defendants believed that, if the reorganization effort failed, Gaudette and Choate had ample personal assets to cover any deficiency; and (iii) the defendants had no fraudulent intent in facilitating the contemporaneous transfers of the Gaudette and Choate personal assets into the FLPs, since the defendants made no attempt to conceal such transfers. Even if these factual findings were correct, however, they would not support judgment for the defendants.

 First, the defendants' subjective beliefs regarding either the prospects for a successful chapter 11 reorganization or the extent of Gaudette's and Choate's personal wealth cannot be dispositive of Bezanson's claim for legal malpractice, which turns upon the distinct issue as to whether counsel's conduct constituted negligence, *viz.,* whether a reasonably prudent attorney in the circumstances would have believed as these defendants purportedly did. *See Kellner v. Lowney,* 145 N.H. 195, 761 A.2d 421, 424 (2000) (holding that negligence turns upon whether defendants " 'reasonably [could] foresee that their conduct would result in an injury to another or if their conduct was reasonable in light of anticipated risks' ") (citation omitted); *cf.* N.H. R. Prof'l Conduct 1.7(b) ("A lawyer

not represent a client if the representation of that client will be directly adverse to another

shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless . . . the lawyer *reasonably believes* the representation will not be adversely affected.") (emphasis added).

Utilizing the appropriate test, no factfinder rationally could determine on the present record that a reasonable attorney would have concluded that defendants reasonably could anticipate a viable prospect for R & R's reorganization absent additional asset contributions from its general partners. *See North Bay Council, Inc., Boy Scouts of Am. v. Bruckner,* 131 N.H. 538, 563 A.2d 428, 430 (1989) ("A plaintiff is entitled to a directed verdict on [legal malpractice] liability . . . if no rational trier of fact viewing the evidence most favorably to the defendant could fail to find on undisputed facts that each element of liability has been proven."). The only substantial asset R & R possessed was the real estate located at 81 Ocean Boulevard. The defendants acknowledge that, within four months after filing the R & R chapter 11 petition, the estimated valuation of that same property had declined *from $1.2 million*—which would have left the estate with but a small net deficit—*to $500,000,* which would have left the estate with a *deficit exceeding $500,000.* So precipitous was this decline in value that it prompted the bankruptcy court to inquire of the defendants whether the personal assets of Gaudette and Choate would be available, if necessary, to implement a viable reorganization, to which Gaudette and Choate responded unequivocally in the affirmative. By May 1992, the estimated valuation fell to a mere $265,000. *A fortiori,* then, these

client.").

defendants' subjective belief—that R & R could reorganize in the face of such an abrupt decline in the value of its sole asset—was plainly unreasonable in the circumstances.

■ Similarly, even if the defendants assumed—as it turns out, incorrectly—that Gaudette and Choate possessed ample non-FLP assets to cover any estate deficit that might frustrate the formulation of a viable chapter 11 plan, no such belief can be squared with the undisputed facts. Contemporaneously with the filing of R & R's bankruptcy petition, the defendants represented Gaudette and Choate in the establishment of several FLPs, and the general partners made no bones about their desire to shield their assets from their own creditors. Yet, while Gaudette and Choate sheltered $700,000 in assets, the R & R estate was confronted with a shortfall exceeding $500,000.

An FLP is a form of ownership, used primarily for purposes of shielding assets from one's creditors (and especially from the IRS), whereby the transferor (*e.g.,* Gaudette) conveys title in his personal assets to the FLP in return for shares in a limited partnership. *See* Patricia M. Annino, *The Family Limited Partnership,* 24 Mass. Practice Series, at § 24.8 (2004) ("There is significant creditor protection with the [family] limited partnership."). Although a limited partner's transfer of the property nominally removes the control of the property from his hands, as a practical matter the transferor may yet retain *de facto* control, inasmuch as the general partners of the FLP are trusted family members, such as children. *Id.* The FLP interests retained by the transferor consist simply of the right to the distribution of a share of the FLP's profits, such that creditors of the transferor are unable to attach the transferred property, the title to which has passed to the partnership.

*Id.* Should the creditors of the transferor attempt to attach these FLP interests to satisfy a debt owed to them by the transferor, normally the FLP agreement would include provisions which contemplate either the general partners' termination of the transferor's FLP interest, or a discretionary halt in the profit distributions to such transferor. *See Baybank v. Catamount Constr., Inc.,* 141 N.H. 780, 693 A.2d 1163, 1167–68 (1997) (noting that creditor which obtains a "charging order" against a limited partner's FLP interest acquires only the rights of an assignee of that interest, hence only the right to share in any profit distribution, and has no right to exercise any partnership rights—such as partnership dissolution—or any recourse against the limited partnership's property) (construing N.H.Rev.Stat. Ann. § 304–B:41); N.H.Rev.Stat. Ann. § 304–B:40 ("Except as provided in the partnership agreement, a partnership interest is assignable in whole or in part. An assignment of a partnership interest does not dissolve a limited partnership or entitle the assignee to become or to exercise any rights of a partner. An assignment entitles the assignee to receive, to the extent assigned, only the distribution to which the assignor would be entitled."); *see also* Revised Uniform Limited Partnership Act § 703; Annino, *supra,* at § 24.14 ("[T]he agreement may specify that the general partners have the ability to retain the limited partnership profits and transfer those profits to the limited partner's capital accounts for reasonable needs of the business.").

Although the bankruptcy court ruled that it was unnecessary to determine whether the FLPs which the defendants established for Gaudette and Choate did, in fact, effectively shield their personal assets from creditors, that fact is hardly superfluous in assessing the defendants'

negligence *vel non.* If the FLPs did have such a shielding effect, then the defendants must be deemed to have had actual knowledge that a substantial amount of Gaudette's and Choate's assets were being diverted beyond the reach of their creditors, and that one of those contingent creditors was the faltering bankrupt estate of R & R.[3]

The undisputed record facts disclose that the FLPs which the defendants executed for Gaudette and Choate were typical FLPs, both in their intent and form. Gaudette conceded that this was his purpose in consulting the defendants about setting up the FLPs. The FLPs contain provisions which Gaudette and Choate could invoke should any creditor (*e.g.,* R & R) attempt to reach the assets which they transferred to the FLPs. *See* FLP 1 Agreement ¶ 6.2 (permitting general partner "the sole discretion" to determine whether to withhold profit distribution to limited partner); ¶ 9.3 (allowing general partner to expel limited partner whose creditors attach his FLP interests). In these particular circumstances, no rational factfinder could conclude that a reasonable attorney would have assumed, absent further assurances (and defendants admittedly sought no such assurances), that Gaudette and Choate planned to retain sufficient assets with which to cover any anticipated deficiency in the R & R chapter 11 estate.

Finally, the finding made by the bankruptcy court that defendants did not conceal the existence of the FLPs is problematic for various reasons. First, the court already had concluded, in connection with the disgorgement-of-fees remedy under section 327, that the defendants

had failed, during the chapter 11 proceedings, to advise the bankruptcy court of the potential conflict of interest, *viz.,* that they represented and would continue to represent the general partners in establishing the FLPs. *Bezanson,* 2003 WL 1233047, at *5. Prior to informing the bankruptcy court that Gaudette's and Choate's personal assets would be available to cover any deficit, thereby inviting the court's reliance upon their superior knowledge of the facts, the defendants were duty-bound to exercise reasonable care to verify those facts. *See Mele v. First Colony Life Ins. Co.,* 127 B.R. 82, 85–86 (D.D.C.1991); *Patch v. Arsenault,* 139 N.H. 313, 653 A.2d 1079, 1084 (1995).

Second, standing alone, the mere fact that the FLP transfers had been duly recorded as required by state law did not remotely approximate the level of candor and disclosure due the chapter 11 debtor and the bankrupt estate, since no reasonable person would expect that either the bankruptcy court or the chapter 7 trustee would conduct a public records search. Nor could the belated financial disclosures made to Bezanson by the defendants during the chapter 7 proceedings—merely listing some of Gaudette's and Choate's interests in limited partnerships (but without identifying them as FLPs)—suffice to cure defendants' earlier failures to disclose. As the parties with superior knowledge, the defendants reasonably could not have expected that such minimal disclosure would place Bezanson on notice to initiate further inquiries regarding the circumstances in which Gaudette and Choate acquired those interests. *See, e.g., In re Love,* 163 B.R. 164, 169 (Bankr.D.Mont. 1993) (noting that neither the bankruptcy

---

**3.** Similarly, the bankruptcy court finding—that Gaudette and Choate gave valid consideration for their FLP interests—is beside the point. Instead, the pertinent issue is whether

the FLP interests had any value to R & R *qua* creditor, whereas non-attachable assets would be of no use to the bankrupt estate in making up any deficit.

court, trustee, nor creditors has any duty to investigate whether attorney has made full disclosure of conflicts of interest). Accordingly, the record cannot support the bankruptcy court's finding that these defendants made adequate disclosure, nor can it serve as a legitimate basis for the legal conclusion that the defendants did not breach the duties owed to R & R as chapter 11 debtor.

■ We have considered remanding the case to the district and bankruptcy courts for further factfinding on the liability issue, but see no need to impose yet a third time on the courts' time, because we conclude that the record plainly discloses, based upon undisputed facts, that no reasonable factfinder could conclude that the defendants did not breach their duties to the chapter 11 debtor. *See N. Bay Council,* 563 A.2d at 430. We explain.

■ The defendants unquestionably were duty-bound to render their representation to R & R free from any and all actual conflicts of interest. The dual representation of a general partnership and its general partners almost invariably entails a plain conflict of interest. *See In re TMA Assocs., Ltd.,* 129 B.R. 643, 647 (Bankr.D.Colo.1991) ("An attorney is at peril when simultaneously representing a partnership and its general partner. The attorney will always be suspect in the eyes of creditors . . . as sometimes subordinating the interests of the partnership to benefit the general partner."); *In re Atlanta Sporting Club,* 137 B.R. 550, 552 (Bankr.N.D.Ga.1991) ("Because a general partner is a target for . . . potential claims by a debtor limited partnership, such a representation presents a potential conflict of interest."); *see also In re Bonneville Pac. Corp.,* 196 B.R. 868, 886 (Bankr. D.Utah 1996) ("When counsel for a debtor in possession undertakes representation of a principal of the debtor, [he] 'abandon[s]

his fiduciary obligations as counsel for the Debtor corporation.' ") (citation omitted). Nevertheless, both before and after the defendants became chapter 11 counsel to R & R, they undertook to represent Gaudette and Choate in their efforts to shield their personal assets from potential creditors, all the while *knowing* that the chapter 11 estate of R & R was one of the largest potential creditors of Gaudette and Choate. The defendants undertook such dual representation at a time when they either knew or reasonably should have known that the assets of the chapter 11 estate were diminishing in value at an alarming rate, and that in all probability no successful chapter 11 reorganization could be arranged absent further contributions to the general partnership from the personal assets of Gaudette and Choate. Consequently, regardless what specific measures defendants might have taken to protect R & R's interests (*e.g.,* a recovery action against Gaudette and Choate), the fact plainly remains that these defendants affirmatively undertook actions (*viz.,* establishing the FLPs, and providing inadequate disclosure to the bankruptcy court and/or Trustee Bezanson) which further undermined the interests of R & R. This, standing alone, constituted a breach of their legal duties of care, candor and undivided loyalty.

### 3. *Causation of Damages*

■ Because the bankruptcy court concluded that the defendants had not breached their duty of care to R & R, *qua* chapter 11 debtor, it did not reach the fact-based issues of causation and damages. Unlike the disqualification/disgorgement inquiry, which does not depend upon whether the defendants' failure to disclose their conflict of interest resulted in a loss, *see Rome,* 19 F.3d at 61, here Bezanson must establish that the defendants' breach

proximately caused damages to the estate—namely, that it led to an unrecoverable deficit, which in turn would result in a diminished dividend to unsecured creditors. Bezanson need not establish that the defendants' breach constituted the only or even the dominant cause of the damages incurred by the bankruptcy estate, but simply that the breach was a substantial causative factor, and that the damages would not have been incurred *but for* the breach. *See Peterson v. Gray,* 137 N.H. 374, 628 A.2d 244, 246 (1993); *N. Bay Council,* 563 A.2d at 434.

Specifically, under New Hampshire's "trial-within-a-trial" methodology, Bezanson must demonstrate what reasonable legal action defendants, if acting in R & R's bests interests, would have pursued against Gaudette and Choate to recover the necessary additional capital contributions, and what the financial yield of those legal actions likely would have been—*viz.,* at least $412,000. *See Carbone v. Tierney,* 864 A.2d 308, 317–18 (N.H.2004).

Once again, no further factfinding by the bankruptcy court is required, given that the record on appeal discloses that no factfinder rationally could conclude that the defendants' breach did not cause the deficiency which precluded any successful chapter 11 reorganization. *See id.* at 430.

We focus initially on the question of the availability *vel non* of any non-FLP assets. The defendants relied upon their subjective belief that, even after the massive transfers of properties into FLPs, Gaudette and Choate retained sufficient non-FLP assets to cover any eventual deficiency in the bankrupt R & R estate, but they did not testify as to any objective basis for their belief, such as their own independent knowledge of alternative assets, or *any* steps taken by them objectively to verify their subjective belief.

Indeed, they never even roused themselves to take the minimal, informal step of *asking* Gaudette and Choate whether they had sufficient non-FLP assets, even though both had expressed an interest and demonstrated the intent to take steps necessary to shield their property from creditors.

Defendants also failed to take steps to compel Gaudette and Choate to disclose their alternative assets to the bankruptcy court during the chapter 11 case. To facilitate an informed assessment of a chapter 11 estate's contribution rights against the general partners of a debtor partnership, Federal Rule of Bankruptcy Procedure 1007(g) provides that the bankruptcy court "may order any general partner to file a statement of personal assets and liabilities within such time as the court may fix." *See In re Selheimer & Co.,* 319 B.R. 395, 410 & n. 9 (Bankr.E.D.Pa.2005); *Commercial Bank v. Price (In re Notchcliff Assocs.),* 139 B.R. 361, 373 (Bankr.D.Md. 1992) ("[T]he [Bankruptcy] Code affords the creditors of the [debtor] partnership leverage to enforce the recovery of contributions from the partners when a deficiency of partnership assets to meet its obligations develops.") (citing Fed. R. Bankr.P. 1007(g)). Instead of invoking this readily available disclosure remedy, defendants affirmatively represented to the bankruptcy court that Gaudette and Choate had sufficient assets to cover any deficiency.

Most significantly, defendants did not attempt to file (or threaten to file) any contribution action against Gaudette and Choate. The bankruptcy court stated that such a complaint would have been futile because Bankruptcy Code subsection 723(a), which explicitly permits a trustee to bring a contribution claim against general partners of a bankrupt partnership, applies only to a chapter 7 liquidation case,

and not to a chapter 11 reorganization case.[4] Numerous courts have held, however, that section 723(a) is a mere codification of a trustee's contribution rights under applicable state law, and that it does not purport to cut off a chapter 11 debtor's state-law authority to prosecute the those contribution rights under Bankruptcy Code § 544's asset-recovery and asset-maximization provisions, which are fully applicable to a chapter 11 proceeding. *See In re Labrum & Doak, LLP,* 237 B.R. 275, 292–93 (Bankr.E.D.Pa.1999); *Madison Assocs. v. Baldante (In re Madison Assocs.),* 183 B.R. 206, 215 n. 11 (Bankr.C.D.Cal. 1995); *accord In re Massetti,* 95 B.R. 360, 365 n. 7 (Bankr.E.D.Pa.1989) ("[S]ubsection 723(a) did not create obligations of a general partner not otherwise found in non-bankruptcy law.").

Bezanson met his burden, under the "trial-within-a-trial" methodology, to prove that such a contribution claim successfully would have yielded enough to cover the final $412,000 deficiency. Under New Hampshire law, Gaudette and Choate unquestionably were liable for the shortfall between R & R's assets and liabilities. *See* N.H.Rev.Stat. Ann. § 304–A:15. The record contains no hint that Gaudette or Choate would have had a valid defense to interpose, and, if they had $412,000 in non-FLP assets, no reason to suppose that

defendants could not have recovered it for the benefit of the chapter 11 estate.

Moreover, even if Gaudette and Choate did not have $412,000 in non-FLP assets, defendants cannot assert the affirmative defense that the judgment was uncollectible, *see Carbone,* 864 A.2d at 319 (noting that malpractice defendant has burden to establish as an affirmative defense that lost judgment would have been uncollectible), because it was the breach of their duty of loyalty to R & R which was the "but for" cause for this noncollectibility.

As we previously noted, the defendants affirmatively violated their fiduciary duty to R & R by facilitating Gaudette's and Choate's post-petition efforts to shield their personal assets through FLP II and FLP III. By representing Gaudette and Choate in these conflictive transactions, they knowingly acted against R & R's interests by shielding the FLP assets from any future contribution claim by R & R. If they had not done so, a contribution judgment against Gaudette and Choate would not have been uncollectible.

Likewise, the defendants' conflict of interest prevented them from considering the commencement of a state-law suit to have Gaudette's and Choate's FLP transactions voided as fraudulent. *See Norwood Group, Inc. v. Phillips,* 149 N.H. 722, 828 A.2d 300, 304 (2003).[5] Bezanson ad-

---

**4.** Subsection 723(a) provides: "If there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership and with respect to which a general partner of the partnership is personally liable, the trustee shall have a claim against such general partner to the extent that under applicable nonbankruptcy law such general partner is personally liable for such deficiency."

**5.** New Hampshire law provides, in pertinent part:

I. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,

whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

duced ample evidence to show that, if defendants had not acted under a conflict of interest, they might have proven both actual and constructive intent to defraud R & R. For example, while simultaneously arranging for R & R to file a bankruptcy petition, Gaudette openly discussed with defendants whether the FLPs would protect his personal assets from his creditors. Gaudette transferred the property to an "insider," *viz.*, an FLP under his family's control, thus retaining *de facto* dominion over that property. He failed to disclose those transfers to the bankruptcy court. The transfers occurred at about the same time R & R entered bankruptcy, and Gaudette knew that R & R's withering financial condition made it likely that he would soon become liable to R & R for additional contribution debts. The FLP properties constituted substantially all of his personal assets, and their transfer rendered him insolvent. As consideration for the property transfers, he received property (*viz.*, FLP shares) which did not have a reasonable value equivalent to that of the property he had transferred, given that his creditors could no longer reach that property to satisfy Gaudette's debts.

Accordingly, the undisputed and exhaustive evidence presented by appellant Be-

zanson establishes that, but for the defendants' breach, the chapter 11 estate would have been entitled to financial recourse against Gaudette and Choate in an amount of at least $412,000. *See Witte v. Desmarais*, 136 N.H. 178, 614 A.2d 116, 121 (1992) (noting that, since the consequences of legal malpractice frequently involve "hypothetical questions," in the event that "damages cannot be measured precisely, they can be estimated").

**The district court decision affirming the bankruptcy court judgment for defendants is hereby vacated; the case is remanded to the bankruptcy court for the entry of judgment in the amount of $412,000 on the legal malpractice claim.**

**SO ORDERED.**

(2) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

II. In determining actual intent under subparagraph I(a), consideration may be given, among other factors, to whether:

(a) The transfer or obligation was to an insider;

(b) The debtor retained possession or control of the property transferred after the transfer;

(c) The transfer or obligation was disclosed or concealed;

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) The transfer was of substantially all the debtor's assets;

(f) The debtor absconded;

(g) The debtor removed or concealed assets;

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) The transfer occurred shortly before or after a substantial debt was incurred; and

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

N.H.Rev.Stat. Ann. § 545–A:4.